273 So.2d 495 (1973)
Monroe Harold EVANS
v.
STATE of Mississippi.
No. 46894.
Supreme Court of Mississippi.
February 19, 1973.
David M. Lipman, Oxford, Johnnie E. Walls, Jr., Greenwood, for appellant.
A.F. Summer, Atty. Gen. by John M. Kinard and Karen Gilfoy, Special Asst. Attys. Gen., Jackson, for appellee.
SMITH, Justice:
Monroe Harold Evans was convicted of armed robbery in the Circuit Court of Harrison County and sentenced to serve a term of 30 years in the penitentiary. He predicates an appeal upon the grounds that (1) he was denied the "effective assistance" of counsel, and (2) the trial court should have conducted a preliminary hearing to determine the legality of his "pretrial identification."
The robbery for which Evans was convicted occurred at a small country drive-in called the Shamrock, owned by one Bond and operated by Bond and his wife. This place had a small four-stool "bar" where beer was served, four tables and a few groceries. In front, there was a gasoline pump.
On the night of the robbery, a customer entered, sat on one of the bar stools and ordered a beer. This was served to him by *496 Bond and was drunk at the bar. The customer then ordered a second beer, also served to him by Bond, which was also drunk at the bar. The customer then told Bond that he wanted a "dollar's worth" of gasoline put in his car and both Bond and the customer went out front where Bond put the gasoline in the automobile. Both came back in and Bond went behind the bar to make change. At this point, the customer drew a pistol, pointed it at Bond and robbed him of his billfold and the money from the cash register. During the course of the robbery Bond's wife entered from the kitchen and observed what was happening. There was a customer at one of the tables who also saw the robber and the robbery. As the robber drove away in his car, Bond ran out the front door and fired at his car. The robber, however, made good his escape.
Evans was identified by Bond and Bond's wife from a number of photographs shown them by officers and he was indicted for the crime in August, 1967. It was not until March 9, 1971, however, that Evans, apprehended in the State of Iowa, was duly extradited to Mississippi to stand trial.
Following his return and notwithstanding the appointment of counsel, Evans began preparing and filing many pro se motions directed toward various propositions. He also began an attack upon his appointed counsel, the gist of which was that counsel was in a conspiracy with the District Attorney to bring about Evans' conviction. Some idea of what occurred in this area may be gathered from the following:

Pro se motion to dismiss legal advisor. "Defendant believes and alleges that said attorney, James Randall, has entered into a conspiracy with the District Attorney's office to deliberately deny him due process of law."

Pro se motion for order to hear arguments in camera: "to insure due process of law and retain a fair trial by jury all motions be heard by the court in camera."

Pro se motion for order restraining District Attorney from cross-examining or interrogating concerning prior criminal record: "he (defendant) has a prior criminal record. Further, that this defendant has critical evidence, if he takes the stand he will expose his criminal record."
Appellant's letter to the trial judge: "I further believe that the District Attorney is scheming on me, in that he is denying me legal counsel until the day that he can get the court to set a jury trial."
Appellant objects to "all this news media and having my picture in the paper and on the streets." THE COURT: "I don't see any cameramen or news media or photographers in the courtroom."
Mr. Randall: "The defendant does not trust the attorney that has represented him and has accused him of being in cahoots with the District Attorney's office, and as such will not confide in him."
Appellant to the court: To my best belief (his attorney) is in cahoots with the District Attorney and would deprive me of due process of law... . Mr. Randall has told deliberate lies about things of my case that are not true... . I don't know what charge I am being charged with. I have never been arraigned in court. I have witnesses that would probably have to be got, or gone to see and interviewed, and Mr. Randall has not done this. I am scared to trust Mr. Randall with my defense.

Mr. Randall: "I have volunteered my time freely to represent this man, and he won't confide in me. I have asked him and tried to get him to confide in me and all he wants to talk about is his motions. I can't as an attorney represent him when he won't confide in me. I *497 think there are two people's rights at stake here, both my rights and his, and I ask that the Court relieve me of this Court appointment."
Appellant: Mr. Randall "is not acting in the capacity of my attorney, he is acting in the capacity of a legal advisor. ... I don't have assistance of counsel, I only have a legal advisor."
Appellant to jury: "This whole case involves conspiracy and at the proper time I hope to prove that to you ladies and gentlemen of the jury."
Appellant (in court): "Requests that the Court withdraw from this case on the ground that Your Honor is personally prejudiced against this Defendant, due to several statements previously made by Your Honor during Mr. Randall's Motion to withdraw as counsel from this case... . Some matters of ruling pertaining to law has been erroneous in numerous instances, and I feel that I could not get a fair and impartial ruling out of this Court during this trial.... I feel the Court's conduct indicates that it has a personal interest in the case, of some type, and I would therefore respectfully request that the Court disbar itself during this trial."
The main thrust of the argument on appeal is now directed toward the proposition that Evans was not adequately represented. This necessarily supposes, but without support in the record, that Evans had a bona fide defense to the charge which his appointed counsel did not put forward.
From the many, lengthy and technical motions prepared and filed by Evans pro se, some of which have been quoted, it is evident that he was no stranger to criminal law and procedure. In fact, it is apparent from these documents that Evans was more than familiar with all of the recent innovations in the field of criminal law. Nor can it be said that his voir dire examination of prospective jurors, cross-examination of at least one witness and his many statements in court do not disclose that he was fully alert to his rights and conscious of the importance of his identification by the victim of the robbery. But, despite the argument now made, never at any stage of the proceedings did Evans state that he had an "alibi defense" nor, in fact, any specific defense to the charge on the merits. It is true that in one or more of his motions he indicated that he was not guilty, but the only explicit statement with regard to the nature of his defense Evans ever made on any of the many occasions in which he addressed jurors, witnesses and the court, was to the effect that there was a conspiracy between his counsel and the District Attorney to bring about his conviction. He stated that he had witnesses but at no time did he indicate who or where they were nor indicate what their testimony would be if present. The arguments now made assume facts in this area not reflected by the record.
He recognized his appointed attorney as his "legal advisor," but insisted that he was not represented by this attorney as counsel. We think it clear, however, from a study of the record, that the fault lay with Evans. Certainly there was enough support for this view to sustain the trial court's action in declining to allow appointed counsel to withdraw. The attorney repeatedly stated that Evans would not confide in him as to his defense, and Evans himself told the court that he would not do so.
There is no support whatever in the record for Evans' charge that his counsel and the District Attorney conspired against him. In fact, the record shows that, under these most difficult circumstances, brought about entirely by Evans' obdurate attitude toward his counsel, this court-appointed attorney did everything that it was possible for him to do in behalf of appellant. The attorney's voir dire examination of prospective jurors, his cross-examination of prosecution witnesses, his timely and effective objections to proposed testimony, his *498 preparation and presentation of well drawn and pertinent jury instructions and his handling of the case generally show that he was far from negligent in the discharge of his duties. This is particularly noteworthy in a case where the client absolutely refused to confide in his attorney or to give him any information as to a possible defense, if it can be assumed that there was such information to give.
The presumption of innocence is a fundamental concept of the criminal law in this country. It is not a mere technical rule to be disregarded or disparaged. Even an indictment, far from creating a presumption of guilt, in no way disturbs or impairs the presumption of innocence. But this does not justify the assumption that only the innocent are indicted, nor that every man indicted for a criminal offense has, if it were but made known, a complete and valid defense to the charge against him. While innocent men have been sometimes indicted, to say the very least, they are in the minority.
The record in this case makes one thing perfectly clear. Evans was an intelligent and articulate man, well versed in the latest utterances of the courts of last resort in the field of criminal law and fully advised of his rights long before his trial began in the court below. Moreover, he was neither timid nor reticent in speaking out in court nor in making known his views on any and all occasions. It is bound to be conceded that not every defendant accused of crime has a valid defense. Many are, in fact, guilty. Counsel is under no obligation to fake a defense where none, in fact, exists. It would be highly reprehensible for him to do so, notwithstanding that his refusal might be disappointing to his guilty client. It is not reasonable to assume, in the absence of anything in the record, that in none of his numerous and varied pro se motions and in none of his many statements in court that Evans would never give a hint of the nature of his defense, if he had one, nor name one witness by whom it could be established if, indeed, there were any. The nearest approach to this appears in one of his statements in court. While cross-examining the robbery victim (who had said the robber had three fingers missing from his left hand), Evans said that the robber couldn't have been himself as he, Evans, had four fingers missing from his left hand.
The robber had sat at the small four-stool bar, and while sitting there had ordered and drunk two bottles of beer. These were served to him by his victim who stood behind the bar. In addition to this, his victim went outside with him and put gasoline in his automobile. He then came back in with his victim and robbed him at pistol point, requiring him to put his money and billfold in a box. It is difficult to imagine circumstances affording a better opportunity to observe another than the victim had of the robber in this case. The victim, the victim's wife and a customer identified Evans as the robber, although the opportunity for observation by the two latter was not so complete or extended as that of the victim himself. The eye-witness identification in this case rests upon a much sounder and more reliable basis than is usual in cases of this kind.
In Shaw v. United States, 403 F.2d 528, 529 (8th Cir.1968), the Court said:
A defendant cannot base a claim of inadequate representation upon his refusal to cooperate with appointed counsel. Such a doctrine would lead to absurd results.
Cf. State v. Austin, 258 La. 273, 246 So.2d 12 (1971).
In Williams v. Beto, 354 F.2d 698, 705, 706 (5th Cir.1965), it was held:
When one seeks the assistance of counsel, he thereby confesses his own inadequacy in the field and stipulates his willingness, like any other client, .... to be bound by the presumably superior knowledge of the professional *499 man on whose assistance he proposes to depend.
He agrees that this attorney will be in charge of his defense in the legal battle about to begin... .
If the indigent client, conferred upon and trusted to the lawyer, knows more about what ought to be done in handling the case, then he needs no counsel and it is folly for him to ask for it.
In United States v. McMann, 386 F.2d 611, 618-619 (2nd Cir.1967), cert. denied 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153, it was stated:
[W]e have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel... . [H]e may not use this right to play a "cat and mouse" game with the court, ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel.
It must be concluded that Evans was guilty and that he had no bona fide defense and that his tactics with reference to counsel were not in good faith but were purposely obstructive and intended to disrupt and delay the judicial process. Evans' guilt of the offense charged was overwhelmingly established by the evidence.
Nor is there merit in Evans' second contention to the effect that his pretrial identification unconstitutionally deprived him of his "rights." In the course of the trial a separate hearing was held, in the absence of the jury, on the manner of the original identification. The evidence on this point was, in substance, that a number of photographs, including one of Evans, had been exhibited to Bond and Bond's wife and that they had identified Evans' photograph as that of the robber. The opportunity Bond and his wife had for observing the robber during the course of the robbery has already been alluded to, and it does not appear that there was anything suggestive or objectionable in the photographs or in the manner in which they were exhibited or used in the original identification. The in-court identification of Evans by Bond and his wife was based upon a more than adequate opportunity to observe him prior to and in the course of the robbery. He was also identified in court by the customer who had not been shown the photographs.
In Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968), the United States Supreme Court said:
[E]ach case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
One of his pro se motions indicates that he knew that he could testify and intended to do so. However, he stated that he had a prior criminal record and sought a ruling from the court that the District Attorney should not be allowed to cross-examine him about it if he took the stand. Other than this his reasons for not testifying do not appear in the record and cannot be known.
We find no prejudicial error in the record and the conviction must be affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, ROBERTSON and SUGG, JJ., concur.