425 So.2d 1022 (1983)
Jerry Lynn YOUNG
v.
STATE of Mississippi.
No. 53,727.
Supreme Court of Mississippi.
January 5, 1983.
Rehearing Denied February 9, 1983.
*1023 David O. Butts and Michael Thorne, Tupelo, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, ROY NOBLE LEE and DAN M. LEE, JJ.
ROY NOBLE LEE, Justice, for the Court:
Jerry Lynn Young was indicted, tried and convicted in the Circuit Court of Lee County, Mississippi, for armed robbery, Honorable Neal Biggers, Jr., presiding, and was sentenced to twenty (20) years with the Mississippi Department of Corrections. He has appealed to this Court and assigns thirteen (13) errors in the trial below.

I.
Was the verdict of the jury contrary to the over-whelming weight of the evidence?
According to the evidence for the State, two (2) fully-masked individuals entered the rear door of the Union National Life and Fire Insurance (Union National) office in Tupelo, Mississippi, on Friday, February 15, 1980, after opening the door with a key. E.R. Easterling and Patricia Thrasher, employees of the insurance company, were at work inside. Easterling looked up from his desk and saw a masked figure at the rear entrance holding a shotgun. He was ordered to "get on the floor" and complied with that order. The robber wore a mask, gloves, and his entire body was covered, but Easterling estimated his height to be 5'7" to 5'8" and stocky build. He could not identify the person. The robber walked over to him and took his wallet which was clipped to his belt loop. As he lay on the floor, Easterling was unable to see any other person involved. Mrs. Thrasher was in an adjoining room, where she was engaged in receiving cash premium checks collected by insurance agents during the week. She heard someone coming in, thought an agent was returning from lunch, and was surprised by a masked figure wearing dark glasses and gloves, who told her to be quiet. She saw the second person with the shotgun and screamed. Mrs. Thrasher did not see any other weapons, and described the first individual seen by her as tall and slim. She could not see the robber's skin, but thought his voice was that of a black person. After about five (5) minutes, Easterling heard Mrs. Thrasher call and ask, if the robbers were gone, and he got up and attempted to call the police. The robbers had ripped out the telephone lines and Easterling went out the back to a business across the alley and called the police. On returning, he noticed a shiny new key still in the back door lock. That door was always kept locked, and all the agents had keys to it.
The police began an investigation of the robbery, but no arrests were made. On March 17, 1980, they arrested James Troy Harrison on another robbery charge and he confessed to the robbery of the Union National office. On March 26, 1980, he gave a statement implicating the appellant in the Union National robbery.
At trial, the facts stated above were testified to by the witnesses. James Troy Harrison and Jimmy Dorman also testified for the State. Harrison, age 33 years, stated he had known appellant approximately fifteen (15) months, and that they worked together in appellant's cleaning and painting business. On the day of the robbery, appellant picked up Harrison around 7:00 or 8:00 a.m.; they talked about robbing the insurance office; appellant told him that there would be a lot of money in the office on Fridays; and that he had a key to get in, together with a drawing of the layout of the building. About a week earlier, Harrison was with appellant and saw one Jimmy Dorman give him a key to the rear door of the building.
Harrison further testified that on the morning of the robbery, he and appellant drove to the home of a Garrett couple, took their truck, and returned to Tupelo where the truck was left at a mall. Then they *1024 went to appellant's home, waited there until around 11:30 a.m., and then returned to the truck, using it to drive to the insurance office. Harrison carried a sawed-off shotgun and Young had a chrome .32-caliber pistol. Harrison got the key from appellant, opened the rear door of the office, and they entered together. Harrison ordered the employees to lie down, and admitted taking Easterling's billfold. They obtained approximately twenty-eight hundred fifty dollars ($2,850.00) from the insurance company, pulled the wires loose from the telephones, and drove back to the mall where they switched vehicles and returned to appellant's home. Appellant gave Harrison six hundred dollars ($600.00) of the money.
Jimmy Mac Dorman, age thirty-two (32) years, testified for the State that he was formerly employed by the insurance company and had worked there approximately two and one-half (2 1/2) months. He had known appellant for two and one-half (2 1/2) years, and met Harrison through appellant. According to him, appellant had seen him with a large sum of money which he had collected from insurance customers and appellant asked him about the collections and agents turning in money on Fridays. Dorman said that appellant told him "I don't want you to do anything, all I want is a key." Dorman gave appellant and Harrison a key to the rear door. On the day of the robbery, Dorman did his usual work, went to lunch, and returned to the office after the robbery was over. That night, he went to appellant's house and appellant gave him six hundred dollars ($600.00).
Appellant's defense was an alibi testified to by himself and his wife. He cross-examined Harrison and Dorman pro se and attempted to discredit their testimony by inconsistencies and contradictions. Appellant contended that Harrison and Dorman were not telling the truth and that he never went to the insurance office nor did he have anything to do with the crime.
Only slight corroboration of an accomplice's testimony is required to sustain a conviction. Feranda v. State, 267 So.2d 305 (Miss. 1972). The testimony of Harrison and Dorman was corroborated to some extent by Easterling and Patricia Thrasher. The credibility and reasonableness of the testimony of Harrison and Dorman was for the determination of the jury. Cochran v. State, 278 So.2d 451 (Miss. 1973). It is within the province of the jury to accept parts of the testimony and to reject parts of the testimony of any witness, and the jury may give consideration to all inferences flowing from the testimony. Grooms v. State, 357 So.2d 292 (Miss. 1978).
We are of the opinion that, applying the same rule here as in a request for a peremptory instruction of not guilty, considering all the evidence in behalf of the State as true, together with reasonable inferences flowing therefrom, and rejecting the evidence of the defendant in conflict therewith, the evidence for the State is sufficient to sustain the verdict of guilty, and it is not contrary to the overwhelming weight of the evidence. Warn v. State, 349 So.2d 1055 (Miss. 1977).

II.
Did the lower court err in declining to dismiss the indictment against appellant?
The appellant contends that he was not sufficiently notified that he would be tried on the indictment here since he was indicted May 26, 1980, arraigned May 27, 1980, and the case was not set at the next August 1980 Term or the next November 1980 Term. The case was set for the February 1981 Term of court, but appellant testified that he did not know the State was serious about trying him. The record does not indicate the reason why the case was not tried during the August and November 1980 Terms. The appellant also contends that he was not afforded a speedy trial which resulted in prejudice to him, in that a witness was not available. However, appellant obtained a continuance from the May 1980 Term to the August 1980 Term and the number of days delay from the indictment to trial, considering that continuance, amounted to one hundred eighty-three (183) days, which is considerably less than the two hundred seventy (270) day limitation *1025 imposed by Mississippi Code Annotated § 99-17-1 (1972). See State v. Davis, 382 So.2d 1095 (Miss. 1980).
We are of the opinion that there is no merit in this assignment.

III.
Did the lower court err in permitting the prosecution to impeach appellant with a recent prior conviction alleged by appellant to have been fraudulently obtained?
The appellant testified in his own behalf and the district attorney asked him about an armed robbery conviction which occurred on December 17, 1980, in Lee County, Mississippi, in Cause # 18,302. The appellant admitted such conviction.
He contends that requiring him to testify about the conviction constitutes reversible error for the reason that such conviction was obtained by fraudulent actions of the State in coercing one of its witnesses to testify falsely against him; that the State willfully concealed material evidence; that the State allowed its witness to testify falsely about material facts without correcting them; that one of the officers suborned perjury and caused a State's witness to testify falsely; and that four (4) State's witnesses perjured themselves at the trial.
The robbery conviction in question was on appeal to the Mississippi Supreme Court at the time the case sub judice was tried, and appellant indicated that he expected the judgment in that case to be reversed either by this Court on appeal or by some subsequent post-conviction action.
This Court had the precise question before it and answered the question adversely to appellant's contention in Milstid v. State, 347 So.2d 1319 (Miss. 1977), quoting from Nicholson v. State, 254 So.2d 881 (Miss. 1971), as follows:
"We find no merit in the appellant's assignment relative to allowing the district attorney to cross examine him in regard to his recent conviction of the crime of manslaughter... . A majority of the jurisdictions hold a defendant may be impeached by the use of a previous conviction which is on appeal. The basis for so holding is that unless and until the judgment of the trial court is reversed, the defendant stands convicted, is no longer presumed to be innocent of the crime for which he was convicted, and may be impeached by that conviction. Of course, after the conviction has been reversed it cannot be used for impeachment purposes until the defendant is again convicted. When a jury in circuit court returns a verdict of guilty, it is a conviction of the crime charged, and unless and until it is reversed by this Court, the conviction stands, and may be used for impeachment purposes. Bucklew v. State, 192 So.2d 275 (Miss. 1966)." (254 So.2d at 883-883). [347 So.2d at 1319-30].

IV.
Did the lower court commit error by failing to specially swear the jury prior to the introduction of evidence in the case?
Appellant contends that the jury should have been sworn specially to try the issues at the outset of the trial, that the record does not so reflect, and that the court committed reversible error.
Although the beginning of the record does not indicate whether or not the jury was specially sworn, the first part of the judgment does so reflect. The pertinent part of the order follows:
CAME a Jury of twelve good [and] lawful men and women and two alternate Jurors, composed of the Special Venire of Jurors drawn to try this cause and the regular panel of Jurors for the week, who after being duly empanelled and especially sworn to try this cause, ...
In Bell v. State, 360 So.2d 1206 (Miss. 1978), the record did not show that the jury had been specially sworn, as provided by Mississippi Code Annotated § 13-5-73 (1972), which the Court noticed without assignment. We declined to reverse on that ground, stating: "[T]he presumption is that the trial judge properly performed his duties and that this rebuttable presumption has not been overcome." 360 So.2d at 1215.

*1026 V.
Did the lower court err in denying appellant the right to personally cross-examine a witness unless he waived counsel?

VI.
Was the right to counsel competently waived by appellant?
As mentioned, the witness Dorman testified on behalf of the State. Prior to that testimony, the appellant was under the impression that Dorman would plead his Fifth Amendment rights and refuse to testify. When Dorman testified on direct, appellant desired to cross-examine the witness pro se and indicated to the judge that he considered himself more competent to cross-examine Dorman than his counsel. The trial judge ruled that, as long as appellant had counsel, such counsel must conduct the examination of the witnesses and that an accused's right to be heard in a criminal prosecution as provided by Article 3, Section 26, Miss.Const. 1890, permitted him to argue his case to the jury along with counsel and did not impose a restriction upon the court in the procedural part of trial. Appellant's position was that he wanted hybrid representation in the actual trial of the case itself, which included examination of the witnesses.
21A Am.Jur.2d Criminal Law § 767 (1981) discusses hybrid representation:
A defendant in criminal proceedings is not entitled as a matter of right to be heard by himself and also by counsel and an application or request by an accused to act as co-counsel may be denied in the discretion of the trial court, at least in the absence of a showing or indication of special need therefor. Nor is an accused entitled to have the services of an attorney for purely advisory purposes.
Under the general rule a defendant who is represented by counsel has no constitutional right to act as co-counsel and make his own summation. And an accused, who has a court-appointed counsel, does not have the right to act as cocounsel at a sentencing hearing.
23 C.J.S. Criminal Law § 979 (1961) provides the following:

Right to appear in person and by counsel. Ordinarily accused must either conduct his own defense or be represented by counsel and cannot combine both; accused has no right to be heard both in person and by attorney; where he is conducting his own defense, he has no right to have an attorney speak for him and he is not entitled to speak for himself where he is represented by counsel. However, the trial court may, in its discretion, permit an accused represented by counsel to participate in the conduct of the case, or permit an accused appearing in propria persona to employ an attorney to sit by and advise him during the presentation of his case, or may even appoint an attorney, with the attorney's consent, to render advisory services to an indigent accused wishing to represent himself.
Under some constitutional provisions accused is entitled to be heard by himself, or counsel, or both. Under such a constitutional provision the right of accused to speak for himself when he is represented by counsel is subject to restriction by the trial court in the exercise of its power to prescribe the manner in which the business of the court is conducted.
The Florida court in Thompson v. State, 194 So.2d 649 (Fla. 1967), held that, under the constitutional provision entitling an accused to be heard by himself, or counsel, or both, the right of the defendant to speak for himself when represented by counsel is subject to restriction by the trial court in the exercise of its power to prescribe the manner in which the trial will proceed and cited the C.J.S. section, supra.[1]
Appellant also contends that he did not enter a competent waiver of counsel when he decided to cross-examine Dorman. The judge was extremely patient with appellant and his attorney and gave them in excess of an hour to determine what appellant *1027 preferred with reference to the waiver of counsel. Appellant delayed and vacillated and the record indicates that he was toying with the court. He was evasive and apparently wanted to act as counsel and have counsel, but when the trial judge pressed him for a decision, appellant expressly told the court that he wanted his counsel to withdraw.
In Matthews v. State, 394 So.2d 304 (Miss. 1981), a situation similar to the one here arose, and we said:
An accused could place the trial judge in a difficult situation by insisting on a pro se trial, and, upon conviction, claim that he/she did not have the benefit of counsel and did not knowingly waive counsel. Again, if the court refused to permit an accused to represent himself/herself, and required him/her to have counsel present the case, the accused could contend that he was denied his/her constitutional right in not being permitted to present his/her defense pro se. [394 So.2d at 311].
In Evans v. State, 273 So.2d 495 (Miss. 1973), citing United States v. McMann, 386 F.2d 611 (2d Cir.1967), cert. den. 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968), the Court said:
"[W]e have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel... . [H]e may not use this right to play a `cat and mouse' game with the court, ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." 273 So.2d at 499.
We have carefully read the record pertaining to these assignments of error. The appellant is knowledgeable in trial procedure and technique and he developed everything favorable to his defense from the time he began to act pro se. Further, the record indicates that Mr. David O. Butts, appellant's attorney, was present and available for advice and consultation to the appellant. In fact, he ably represented the appellant during the instruction phase of the trial, and he argued the case to the jury. He prepared the appeal and, even now, represents the appellant.
We conclude that there is no merit in Assignments V and VI.

VII.
Did the lower court err in permitting the reading of a letter which bolstered the testimony of Troy Harrison and Jimmy Dorman?
During the cross-examination of Harrison, the State offered to introduce a statement indicating that no witness had been promised leniency in consideration for his testifying. The defense objected and the offer was denied. The witness Dorman testified on cross-examination, that no offers of leniency had been made to him. During the redirect examination of Dorman, the written statement was read and again offered in evidence. No objection was made and the court admitted it in evidence. Thereafter, appellant objected on the ground that the statement was self-serving, and the court overruled the objection. The statement consisted of the following letter from the district attorney to the defense attorney:
Gentlemen: Please be advised per your request that the State of Mississippi has not made any promises or agreements with one, Troy Harrison, Shirley Harrison or Jimmy Mac Dorman or their respective attorneys in exchange for their testimony against the defendant, Jerry Lynn Young. They have been advised that the State would advise the Court of their cooperation so that the Court may consider this factor in disposition of the charges against them.
The appellant now contends the letter was hearsay and was an attempt to bolster Dorman's testimony to a previous out-of-court statement. The State replies by arguing that the point was not properly objected to until after the statement was read and marked as an exhibit, and that the objection was not timely and the question *1028 was not preserved. Buford v. State, 372 So.2d 254 (Miss. 1979). Where hearsay evidence is not properly objected to it may be considered by the jury for whatever probative value the jury may assign to it. Sanders v. State, 260 So.2d 466 (Miss. 1972); Pepper v. State, 200 Miss. 891, 27 So.2d 842 (1946).
We also note that in answering one of appellant's questions, Dorman referred to the letter without objection from appellant. We are of the opinion that the point was not properly preserved and does not constitute reversible error.

VIII.
Did the lower court err in premitting attorney Jimmy Shelton and attorney John Fox to refuse to answer certain questions by claiming the attorney-client privilege?
One part of appellant's defense went to the proposition that the testimony of Harrison and Dorman resulted from agreements to grant them leniency in return for their testimony. Appellant called their attorneys as witnesses and both attorneys declined to comment on discussion between them and their clients on the ground of the attorney-client privilege. The appellant argues that the court should have instructed them to answer regardless of the privilege.
The record reflects that the privilege was claimed only when the witnesses were questioned about conversations with their clients. Discussions between the attorneys and the prosecution were not claimed as matters of privilege and both Shelton and Fox answered that they had not made any deals.
The appellant further contends that the court should have permitted him to cross-examine Attorney Fox. The court declined to permit the cross-examination on the ground that appellant called Fox to testify and appellant would not be allowed to cross-examine his own witness. In Denton v. State, 348 So.2d 1031, 1033 (Miss. 1977), the Court stated the rule as follows:
In the case of Hall v. State, 250 Miss. 253, 264, 165 So.2d 345, 350 (1964), we pointed out that "Witnesses may be cross-examined or impeached by the party calling them when they prove to be hostile. (Citing cases) ... But" we said, "a proper foundation must be laid in order to impeach a witness. The party must first show that the evidence as given, has taken him by surprise and that the witness is hostile. The witness may then be asked if he has made contradictory statements out of court, the times, places and circumstances of the statements being described to him in detail. Underhill's Criminal Evidence, Vol. 1, Fifth Edition, p. 547." (197 So.2d at 239-240).
There is no evidence indicating surprise on the part of appellant, nor was there any evidence of hostility toward appellant on his part, and the lower court committed no error.

IX.
Did the lower court err in referring to Troy Harrison and Jimmy Dorman as accomplices in Instruction D-19A, which follows:
Troy Harrison and Jimmy Dorman are accomplices in this case and the testimony of an accomplice is to be considered and weighed with great care and caution. You may give it such weight and credit as you deem it is entitled.
Appellant claims that the instruction peremptorily told the jury that the witnesses were accomplices of appellant when part of the appellant's defense was that he had nothing to do with the crime and that he was not a participant in it.
The appellant did not object to the instruction when requested and given, and no objection was made until after closing argument. Therefore, the point was not timely preserved.
The instruction refers to Harrison and Dorman as accomplices and, in fact, they were accomplices between themselves. The exact instruction, though not argued in the cases following, was specifically approved in Robinson v. State, 219 So.2d 916 (Miss. 1969) and Graham v. State, 219 So.2d 920 (Miss. 1969).

*1029 X.
Did the lower court err in refusing Instruction D-16?

XI.
Did the lower court err in granting Instruction S-2?
The instructions follow:
Instruction D-16
The Court instructs the jury that if you believe that Troy Harrison and Jimmy Dorman, or both, were persuaded to testify by any promise or leniency or reward or if you believe that their testimony occurred as a result of an understanding between them and the State to the effect that they would be compensated in some way by the State for testifying, then you must take such beliefs into consideration in determining what weight you should give to their testimony and you may consider such promise or understanding to be, of itself, a strong motivating reason for them to fabricate their testimony and such testimony should be highly suspect and should not be accepted unless it carries with it the absolute conviction of truth.
Instruction S-2
The Court instructs the Jury that each person present at the time of and consenting to and encouraging the commission of a crime and knowingly, wilfully and feloniously doing any act which is a part in the crime or immediately connected with it or leading to its commission is as much a principal as if he had with his own hand committed the whole offense.
Therefore, if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Jerry Lynn Young, was present when Troy Harrison wilfully, unlawfully, and feloniously made an assault upon E.R. Easterling and Patricia Thrasher, agents and employees of Union National Life Insurance Company, Inc., a corporation, and put them in fear of immediate injury to their persons by the exhibition of a deadly weapon, to-wit: a 12 gauge shotgun, and from their presence and against their will did feloniously rob, take, steal and carry away the sum of $1500.00 and more in cash, good and lawful money of the United States, the property of the said Union National Life Insurance Company, Inc., a corporation, and that he, the defendant Jerry Lynn Young consented to or encouraged the commission of that crime and knowingly and feloniously performed any act which was a part in the crime or immediately connected with it or leading to its commission, then you shall find the defendant, Jerry Lynn Young, guilty as charged.
The principle of Instruction D-16 was covered in Instruction D-19, and the Instruction S-2 followed the indictment and the law. It is argued that S-2 permitted the jury to find appellant guilty as an accessory before the fact. However, the instruction is based upon the facts of the State's case and the law that an accessory before the fact is guilty as a principal.
In our opinion, there was no error in denying and granting the instructions.

XII.
Was the appellant deprived of a fair trial?
The appellant, under this assignment, sets out eighteen (18) instances which he contends deprived him of a fair trial. We have considered the entire record pertaining to that contention and conclude that the appellant received a fair trial and that there is no merit in this assignment.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] The Florida Constitution contains the same wording as the Mississippi Constitution, Art. 3, Sec. 26. "Accused ... shall be heard by himself, or counsel, or both."