832 So.2d 561 (2002)
Eddie James WOULARD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00917-COA.
Court of Appeals of Mississippi.
May 21, 2002.
Rehearing Denied August 6, 2002.
Certiorari Denied December 5, 2002.
*563 Leslie D. Roussell, Laurel, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. Eddie James Woulard was convicted of depraved heart murder and possession of a firearm by a convicted felon in the Circuit Court of Wayne County, Mississippi. Woulard was sentenced to serve a term of life for murder and five years for possession of a firearm by a felon, the sentences to be served consecutively. Feeling aggrieved by the conviction against him, Woulard filed this appeal and alleges four assignments of error. First, Woulard alleges that the trial court erred when it allowed a seven year old witness to testify. Next, he argues that the trial court erred when it allowed Officer Alfred Hill to testify in violation of the rule of sequestration. Woulard further argues that the trial court erred when it allowed Officer Hill to testify concerning incriminating statements made by Woulard. Finally, he argues that the trial court failed to administer the appropriate oaths to the jury.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Eddie James Woulard lived in a home with his wife, Melody, her mother, Monique Parker Terrell, Monique's husband, Antwan Terrell, and Melody's three young children, Raven, Shaquita, and Reshod. On or about November 7, 1999, Woulard was at home along with Monique, Antwan, and the three children. Antwan and Raven were watching television together when Woulard came home. Antwan and Woulard soon began to argue with each other. Raven left the room because she was frightened by the argument. She joined Melody and her siblings in her grandmother's bedroom.
¶ 4. Raven and the others continued to hear Woulard and Antwan arguing with each other. They then heard a gunshot. Melody went into the room where the two men were and asked Woulard if he shot Antwan. Woulard answered yes and then left the house.
¶ 5. The ambulance driver who was called to the house contacted the sheriff's office to notify the police of the shooting. Officer Martin Milton was in the dispatcher's office and answered the telephone call. The ambulance driver informed Officer Milton that he was en route for a possible shooting victim. He gave Officer Milton the address and asked if he would meet him there. Officer Milton agreed and he quickly left to meet the ambulance. He spoke with Melody and from the information she provided him, Officer Milton notified the other on-duty deputies of Woulard's name, description and a possible destination.
¶ 6. Officer Alfred Hill proceeded to the suspected destination, Woulard's sister's home, and found Woulard there. After a brief conversation, Officer Hill arrested Woulard. He was later indicted and convicted of the crimes charged.

LAW AND ANALYSIS
I. DID THE TRIAL COURT ERR IN ALLOWING RAVEN WILLIAMS TO TESTIFY?
*564 ¶ 7. Woulard argues that the trial court erred when it allowed Raven Williams, a seven year old child, to testify to the events that occurred on the day in question. He asserts that the court failed to make a proper determination as to the competency of Raven before she was allowed to testify. Woulard further argues that Raven's competency should have been examined outside the presence of the jury and because the judge insisted on questioning Raven before the jury, he could not ask the "hard" questions because he would appear "mean."
¶ 8. Any analysis challenging the competency of a witness begins with the assumption that every person is competent to give evidence, subject to certain exceptions based on considerations of policy unrelated to the capacity of the witness to comprehend and relate relevant information. Barnett v. State, 757 So.2d 323(¶ 13) (Miss.Ct.App.2000). Whether a child is competent to testify is an issue that is largely within the discretion of the trial court. Burbank v. State, 800 So.2d 540(¶ 6) (Miss.Ct.App.2001).
¶ 9. Older case law indicates that before allowing a child witness to testify, the trial judge should determine that the child has the ability to perceive and remember events, to understand and answer questions intelligently, and to comprehend and accept the importance of truthfulness. Brent v. State, 632 So.2d 936, 942 (Miss. 1994). However, in Bailey v. State, 729 So.2d 1255(¶ 20) (Miss.1999), the Mississippi Supreme Court determined that it was not necessary for a trial judge to conduct an individual voir dire of a witness of tender years. The court in Bailey stated the witness was asked preliminary questions by the State which did not go to the substance of the child's testimony. Id. These questions were deemed sufficient for the trial judge to determine that the Brent standard had been met. Id.
¶ 10. In the case sub judice, the State and counsel for Woulard questioned Raven to determine her competency to testify. When questioned by the State, Raven testified in part as follows:
Q: Do you know the difference between truth and a lie?
A: (Nods affirmatively.)
Q: Okay. What would be a lie?
A: When you tell a story.
Q: Okay. Something that is not true?
A: (Nods affirmatively.)
Q: Did you and I talk about how important it is to tell the truth in this particular room?
A: Yes, ma'am.
Q: Okay. And did anybody tell you what to say?
A: No, ma'am.
Q: Can you tell this Judge and this Jury what happened at the trial that day truthfully?
A: Yes, ma'am.
Judge: Would you ask her about does she have a memory about the day of the incident, if she remembers that, and if she does, can she tell it?
Q: What the Judge was talking about is do you remember the day that this happened ... And will you be able to tell the Jury what happened?
A: I know some of it, but I don't know all of it.
Q: Can you tell us about what you know about, what you saw and heard?
A: Yes, ma'am.
When questioned by counsel for Woulard, Raven testified in part as follows:
Q: Did anybody remind you about anything that happened that day?
*565 A: No, sir.
Q: Okay. So, the day we're talking about you're going to tell us all about stuff that you saw?
A: Yes, sir.
Q: Do you remember things that you saw that day?
A: Some of it.
Q: Do you remember why you were over there that day?
A: My mama had to go to work.
Q: Do you know where that house is?
A: Yes, sir.
Q: Do you know whether or notdo you remember anybody telling you about what happened that day?
A: No, sir.
¶ 11. After questioning Raven a second time to determine that she had not been prompted by anyone, counsel for Woulard informed the court that any other questions would go to credibility. The trial judge determined that pursuant to Mississippi Rules of Evidence 601, Raven was competent to testify. He noted that she demonstrated a "present ability to remember events, to understand and answer questions intelligently and to comprehend and appreciate the importance of testifying truthfully." This decision was well within the judge's discretion and Woulard has failed to present any evidence to indicate that such a decision was an abuse of discretion.
II. DID THE TRIAL COURT ERR IN ALLOWING OFFICER HILL TO TESTIFY IN VIOLATION OF THE RULE OF SEQUESTRATION?
¶ 12. Woulard argues that the trial court erred in allowing Officer Hill to testify because he was present in the courtroom during the testimony of one of the other witnesses in violation of Mississippi Rule of Evidence 615, the exclusion or sequestration of witnesses. He maintains that Officer Hill's testimony was necessarily colored because he heard Officer Martin testify and as such, the trial court should not have allowed him to testify.
¶ 13. It is well settled in Mississippi jurisprudence that when a violation of Rule 615 is alleged on appeal, this Court is limited to an abuse of discretion standard of review. Douglas v. State, 525 So.2d 1312, 1318 (Miss.1988). Reversal is not justified unless there is a showing of prejudice sufficient to constitute abuse of discretion on the part of the trial judge in not ordering a mistrial or not excluding testimony. Id.; Whittington v. State, 748 So.2d 716(¶ 19) (Miss.1999).
¶ 14. Rule 615 of the Mississippi Rules of Evidence states:
At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
The purpose of the rule is "to avoid witnesses `tailoring' their testimony to fit testimony that has gone before." Rochell v. State, 748 So.2d 103 (¶ 35) (Miss.1999) (quoting Douglas, 525 So.2d at 1317).
¶ 15. It is clear from the record that the State was not aware that Officer Hill was present in the courtroom while the trial was ongoing. Officer Hill was wearing plain clothes and had never met with the prosecutor before the day of trial. The court questioned the State as to the extent of Officer Hill's testimony before he *566 was allowed to take the stand. The State advised the court that it would not ask Officer Hill questions concerning the substance of Officer Martin's testimony. The court stated that counsel for Woulard would have full-bore cross-examination and could question Officer Hill in detail about what he may have heard during Officer Martin's testimony.
¶ 16. After a thorough review of the record, we can find no evidence that Woulard was prejudiced by the court's decision to allow Officer Hill to testify. Hill's testimony was brief and only repeated facts that had been previously admitted. Whenever a violation of the rule has occurred, the remedy lies within the court's discretion. Rochell, 748 So.2d at (¶ 35). Remedies may include prospectively excluding the witness where prejudice will otherwise ensue; striking the witness's testimony where connivance gave rise to the testimony; striking the witness's testimony where the testimony gave rise to prejudice; or, most appropriately, allowing the other party to subject the witness to a "full-bore cross-examination" on the facts of the rule violation. Hughes v. State, 735 So.2d 238(¶ 77) (Miss.1999) (quoting Brown v. State, 682 So.2d 340, 349 (Miss. 1996)).
¶ 17. The trial court ruled that the appropriate remedy was allowing Woulard a "full-bore cross-examination." This decision was a proper exercise of the court's discretion.
III. DID THE TRIAL COURT ERR IN ALLOWING OFFICER HILL TO TESTIFY TO INCRIMINATING STATEMENTS MADE BY WOULARD?
¶ 18. Officer Hill responded to Officer Martin's call that Woulard may have gone to his sister's after shooting Antwan. Officer Hill proceeded to that address and saw Woulard in the yard with his sister. Hill testified that Woulard was handing something to his sister. He stepped out of his car and told Woulard that he wanted to talk to him about a shooting. Hill stated that Officer Martin had informed him that Woulard was a suspect in a shooting and was presumed to be armed and dangerous. When Woulard started toward him, Officer Hill stated, "I want the gun." Woulard answered, "I threw it in the river."
¶ 19. Woulard claims that this statement should not have been admitted because Officer Hill had not issued him a Miranda warning before asking for the gun. Woulard argues that any conversation between a suspect and a police officer automatically qualifies as an interrogation. He further argues that he was in custody because Officer Hill was looking for him and wanted to question him.
¶ 20. Absent a knowing and intelligent waiver of rights, statements made by a suspect while under "custodial interrogation" are inadmissible at trial where prior to making the statements the suspect was not Miranda warned. Miranda v. Arizona, 384 U.S. 436, 444-45, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Tolbert v. State, 511 So.2d 1368, 1374 (Miss.1987). Firmly embedded in the jurisprudence of this state and many others are circumstances wherein Miranda never comes into play; circumstances which are by definition excluded from Miranda's scope. Tolbert, 511 So.2d at 1375. "In a non-custodial setting where interrogation is investigatory in nature (general on-the-scene-investigation), Miranda warnings are not required in order that a defendant's statements be admissible. Even in this setting, statements must be freely and voluntarily given in order to be admissible." Porter v. State, 616 So.2d *567 899, 907 (Miss.1993) (citing Nathan v. State, 552 So.2d 99, 103 (Miss.1989)).
¶ 21. The issue in the case sub judice is whether Woulard was in custody when he made the statements and whether they were freely and voluntarily made. The test for whether a person is in custody is whether a reasonable person would feel he was in custody and depends upon the totality of the circumstances. Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996). The factors to be considered include "the place and time of the interrogation, the people present, the amount of force or physical restraint used by the officers, the length and form of the questions, whether the defendant comes to the authorities voluntarily, and what the defendant is told about the situation." Id. The key point in determining whether a person is in custody as defined by Miranda is whether the person is deprived of his freedom of action in any significant manner and if he is aware of such a deprivation. Id.
¶ 22. Applying the above cited case law to the case at bar, it is clear that Woulard was not in custody. Officer Hill and Woulard were standing in Woulard's sister's front yard. The only people present were Woulard, Hill, and the sister. Officer Hill had not arrested Woulard, he had not been placed in handcuffs, and he was not even in close physical proximity to Officer Hill; in short, his freedom of action was not significantly restrained.
¶ 23. The circumstances in this case are similar to those presented in Hopkins v. State, 799 So.2d 874(¶ 8) (Miss.2001). In Hopkins, the court stated, "[b]efore he made the statements, Hopkins was not handcuffed or told he was under arrest by Sergeant Williamson or any other law enforcement officer present at the scene. Under these non-coercive conditions, we hold that Hopkins was not `in custody' for Miranda purposes...." Also, in Norman v. State, 302 So.2d 254, 258 (Miss.1974), the court approved on the scene questions asked by an officer during the investigation of a shooting as actions taken in the interest of security. Officer Hill told Woulard that he wanted the gun as part of his on the scene investigation of the shooting and in the interest of safety. Hill had prior knowledge that Woulard was suspected in a shooting. Officer Hill's statement was an action taken in furtherance of security and did not amount to custodial interrogation.
IV. DID THE TRIAL COURT ERR BY FAILING TO ADMINISTER THE PROPER OATHS TO THE JURY?
¶ 24. Woulard asserts that the trial judge failed to administer the proper oaths to the jury. It is not clear from the record when and how the jury was sworn. In Young v. State, 425 So.2d 1022, 1025 (Miss.1983), the Mississippi Supreme Court considered a case with very similar facts. As noted in Young, the beginning of the record does not indicate whether or not the jury was specially sworn. Id. However, the judgement does reflect that the jury was properly sworn. Id. The order states in pertinent part, "the Jury consisting of Cassandra McKenzie and eleven other Jurors, being duly sworn and impanelled ...."
¶ 25. In Young, the court stated, "[t]he presumption is that the trial judge properly performed his duties ...." Id. (quoting Bell v. State, 360 So.2d 1206, 1215 (Miss. 1978)). Woulard has not presented sufficient evidence to overcome this presumption. As such, this assignment of error is without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY, MISSISSIPPI OF CONVICTION OF COUNT I, MURDER AND SENTENCE OF LIFE AND COUNT II, *568 POSSESSION OF A FIREARM BY A FELON AND SENTENCE OF FIVE YEARS TO RUN CONSECUTIVELY WITH COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. COSTS ARE ASSESSED TO WAYNE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.