394 So.2d 304 (1981)
Beneal MATTHEWS and Edward Eugene Jacob
v.
STATE of Mississippi.
No. 52392.
Supreme Court of Mississippi.
January 28, 1981.
*306 J. Murray Akers, Akers & Griffin, Greenville, for Beneal Matthews.
Edward Eugene Jacob pro se.
Bill Allain, Atty. Gen. by Mark A. Chinn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Beneal Matthews and Edward Eugene Jacob were jointly indicted, tried and convicted in the Circuit Court of Washington County on a charge of armed robbery. The trial judge sentenced Matthews to sixteen (16) years and Jacob to twenty-three (23) years in the custody of the Mississippi Department of Corrections, and they have appealed here. Matthews appeals by counsel and Jacob appeals pro se, both on the same record. Matthews assigns six (6) errors and Jacob assigns one (1) error in the trial below.
The evidence for the State overwhelmingly supports the conviction of both appellants. About 10:30 a.m. on August 19, 1979, the appellants, who claim to be husband and wife, went to the apartment of one Clemon Smith in Leland where they were admitted by Smith, who thought they wanted to buy marijuana. Upon gaining entrance into the apartment, Jacob drew an automatic pistol on Smith, forced him to lie on the floor, and while Matthews held the gun on Smith, Jacob tied his feet, and bound his arms behind his back. He also tied up Smith's female companion and placed two (2) small children in an adjoining bedroom. Appellants took six hundred thirty-seven dollars ($637.00) in cash and personal items consisting of food stamps, a tape player, and a watch, then left the apartment and drove away.
Smith freed his feet and ran after the robbers with his hands still tied behind his back. A neighbor noticed the commotion and noted the license tag number of the car in which appellants fled. Smith and his neighbor tried to catch the appellants by following them in the neighbor's automobile but were unsuccessful. They then went to the Leland police station where the robbery was reported and a description of the appellants and their car given to the police.
Information concerning the robbery was relayed to officers in nearby cities and counties. A Sharkey County deputy sheriff received the report and stationed himself at a highway intersection near Rolling Fork. After a short while, he observed a car which fit the description of appellants' vehicle. As the automobile proceeded toward Rolling Fork, the deputy sheriff contacted police officer Alton Norris in that city and together they stopped the automobile and arrested Jacob, the driver. The deputy left with Jacob en route to Leland and Officer Norris remained at the scene of the arrest to look after Matthews and her four (4) children, who were on the back seat. Norris went to his patrol car to use the radio, and Matthews started the Jacob car and fled at high speed. Officer Norris pursued her, saw her throw three (3) objects out the car window (later identified as two bags of marijuana and the pistol used in the robbery), and halted her about six hundred (600) yards away. He placed Matthews under arrest and removed her and the children to the patrol car. Norris then got in the Jacob automobile for the purpose of removing it from the highway and saw and opened a bag on the floorboard which contained *307 a large amount of money. Subsequently, it was identified as having been taken from Smith.
Matthews and the children were transported to the Rolling Fork police station and, while the attending deputy was attempting to obtain a social worker to care for the children, Matthews escaped through a bathroom window. Sometime later she was discovered hiding in a Rolling Fork church. She was transferred to the Leland jail where she complained of dizziness and nausea. An ambulance was called and Matthews was examined by two medics, but remained at the jail. While there, she executed a written consent for search of the Jacob automobile and items found were admitted in evidence at the trial.

I.

Did the lower court err in informing the jury (entire panel had not been selected) it would instruct them on the weight and credibility of the evidence?
During voir dire of the jury, the trial judge told members on the panel that at the conclusion of the case he would "instruct the jury as to what weight and what credibility they were to give the testimony of the witnesses in the case." Matthews contends that this comment constituted error, since the jurors may have anticipated the court would give guidelines pursuant to that statement. First, no objection was made to the statement and the question cannot be raised here for the first time. Even so, assuming the issue to be properly before us, the comments are not reversible error.
The court granted Instruction # 1 which told the jury: "Your exclusive province is to determine the weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case." There could not have been any confusion or prejudice to the jury by reason of the trial judge's comment, because Instruction # 1 told them that the weight and credibility to be given testimony of witnesses were within the exclusive province of the jury.

II.

Did the lower court err in admitting into evidence articles taken from appellants' car pursuant to a consent to search form executed by Matthews?

III.

Did the lower court err in admitting into evidence money discovered in a bag inside the automobile at the time of Matthews' arrest?
The above assignments relate to evidence obtained from the car driven by both appellants and are considered together. Appellant introduced members of her family who testified that she was ill when she consented to the search of the automobile and that the consent was not voluntarily given. After the hearing to suppress such evidence, the trial judge made the following findings of fact:
(1) The arresting officers had more than sufficient probable cause to stop the car in which appellants were riding and to arrest. Thus, the arrest was legal and lawful.
(2) Seizure of the gun thrown from the window of the car was lawful.
(3) A bag of marijuana and ammunition of a caliber other than the gun found to have been used in the robbery were declared irrelevant and inadmissible.
(4) Other objects found in the car, later identified as those stolen, were seized lawfully and pursuant to a valid consent by Matthews.
(5) The bag of money was lawfully seized under the circumstances and was incident to a lawful arrest.
(6) The defendants/appellants presented no evidence refuting the admissibility of the evidence, if secured without valid consent.
The State has the burden of proof to show that the accused voluntarily consented to a search. Luton v. State, 287 So.2d 269 (Miss. 1974), cert. den. 417 U.S. 920, 94 S.Ct. 2627, 41 L.Ed.2d 225 (1974). *308 We are of the opinion that the State met that burden of proof, as found by the trial judge, and such determination will not be reversed here. Cutchens v. State, 310 So.2d 273 (Miss. 1975). Also, we are of the opinion that the officers had probable cause to stop the vehicle first being driven by Jacob and to arrest him; that they had probable cause to arrest Matthews after she fled their custody and threw articles from the vehicle; and that Officer Norris, seeing the bag on the floorboard, was authorized to seize it and search the automobile pursuant to arrest.

IV.

Did the lower court err in failing to enter a mistrial because of the prosecutor's comments on the failure of appellants to testify and in failing to instruct the jury concerning same?
During cross-examination of the State's first witness, Jacob phrased questions in such manner that the court told him he would be allowed to testify and present witnesses later. The prosecuting attorney objected to cross-examination of the witness and said: "Your Honor, I object to this testimony now. I believe he will have an opportunity to do that [testify]." The court cautioned Jacob on his manner of questioning the witness, and told him that the appropriate time for him to refer to those matters was before the jury or in closing argument. During Jacob's closing argument the district attorney objected to a part of it, stating, "Your Honor, I object to him testifying  if he wants to take the stand." On this appeal the above comments are assigned as error. Appellants neither requested a cautionary instruction to the jury nor did they ask the court to tell the jury to disregard the statement. Consequently, the point is not properly preserved. Even so, the appellants presented and argued their cases in person and the court studiously tried to preserve their constitutional rights. In Jones v. State, 381 So.2d 983 (Miss. 1980), the Court said:
"The Mississippi Constitution gives the accused the right to be heard by himself or counsel, or both. However, it does not exempt a defendant who argues pro se from following the rules of court procedure. We do note, however, that the trial court should allow him some leeway in arguing his case, each case necessarily resting on its own facts and circumstances." 381 So.2d at 993-994.
and, further:
"But, in those instances where a defendant, arguing pro se, clearly goes beyond the evidence in the record on a material point, as he did in this case, he must accept as a consequence the prosecution's comment on his failure to swear to the testimony. The defendant's remarks in this case cannot be dismissed as a failure to grasp `legal niceties.' They are unsworn testimony, and as such, constitute a partial waiver of the constitutional privilege against self-incrimination and the prohibition against a district attorney from commenting on his not taking the stand.
We do not say that every defendant who argues pro se loses the privilege against prosecutorial comment on his failure to testify. Only when the defendant's remarks go beyond the evidence does he waive this privilege." 381 So.2d at 994.

V.

Was the verdict of the jury contrary to the overwhelming weight of the evidence?
The facts supporting the State's case have been briefly stated hereinabove. Without further comment, the facts were uncontradicted and overwhelmingly supported the jury verdict of guilty. There is no merit in this contention. Jones v. State, 358 So.2d 414 (Miss. 1978).

VI.

Did the lower court err in overruling Matthews' motion for a new trial?
This is the most serious question presented. Every accused has a constitutional right to be represented by an attorney. Gideon v. Wainwright, 372 U.S. 335, *309 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). A waiver of that right may occur at any time, before or during the trial, but it must be made with a full understanding of its disadvantages and consequences. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Boyd v. Dutton, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
In Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), the United States Supreme Court stated:
"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused  whose life or liberty is at stake  is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." 384 U.S. at 150, 86 S.Ct. at 1321, 16 L.Ed.2d at 130.
On the other hand, an accused has a constitutional right to represent himself and to present his own case pro se without an attorney. In Gray v. State, 351 So.2d 1342 (Miss. 1977), appeal after remand, 375 So.2d 994 (Miss. 1979), this Court set out the following:
"Mississippi Constitution Article 3, section 26 (1890) provides in part:
`In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, ...'
The refusal to permit defendant to argue his case is in direct violation of the above constitutional provisions and requires reversal." 351 So.2d at 1345.
See Ballard v. State, 366 So.2d 668 (Miss. 1979).
In the present case, two learned and experienced judges participated in the trial. The first appointed the Public Defender of Washington County as attorney for Matthews and Jacob. He appeared for them at pretrial hearings and performed in a creditable manner. At the beginning of the trial on its merits, the appellants expressed dissatisfaction with the appointed attorney and desired to proceed pro se. Upon motion of the public defender, the trial judge relieved him of Matthews' defense and appointed other experienced counsel to represent her. She declined the representation after having been thoroughly advised by the trial judge of her constitutional rights to have counsel and after his recommendation that she permit counsel to handle her defense. Jacob also declined counsel to represent him and desired to defend himself.
In spite of the expressed wishes of the appellants to represent themselves, the trial judge required the appointed attorney for Matthews to remain in the courtroom to be available to Matthews at any time she wanted him, and to advise and counsel with her, and to become involved in her defense, if she so desired, at any time during the trial. The same was done for Jacob with the public defender.
After the trial of the case, the attorney who had been appointed to represent Matthews, and whose representation she declined, filed a motion for new trial setting out that Matthews had a previous history of a mental disorder resulting from an accident, and he called to the witness stand Dr. Luther Roy White, Jr., a psychiatric consultant for the Mental Health Center in Greenville. Dr. White testified that he saw Matthews on October 5, November 6, and December 14, 1979. He gave his opinion that Matthews was influenced by Jacob in her decision to decline representation by an attorney and that she was not able to understand and appreciate the fact that she was refusing the lower court's offer to appoint counsel for her. Dr. White's opinion resulted from taking Matthews' history and from examining the reports of a urologist and hospital data from Berkeley, California, dated May 8, 1979.
The trial consumed four (4) days. During that period, the trial judge observed Matthews and advised her on procedural matters. He was of the opinion that she was not influenced by Jacob, but, rather, was more intelligent and was better able to conduct her defense than Jacob. He made *310 the following record of what he personally saw and knew about Matthews:
"BY THE COURT: I do this informally and I have not prepared any remarks for the record other than the ones that I will now make.
First of all, I agree with Mr. Gleason that the record will clearly show that on more than a few occasions this Court did everything but  and I have said this before I was quoted in the newspaper on this  but get down on my knees and beg the two defendants to avail themselves of the assistance of counsel which were provided for them. Both Mr. Jacob and Ms. Matthews, not only refused the Court's warnings and pleadings on this issue, but they did so obstinately, consistently and in some instances with rudeness. Having not been present during the preliminary matters which were held prior to the date of the actual trial of this case, I am not aware of what took place before Judge Wilkes other than this record I have before me in the Court file in the case. However, from the date of the trial until this date, I do feel that I have been intimately involved with the case and with Ms. Matthews. I recall my first experience with Ms. Matthews and Mr. Jacob was in open Court where I explained to her the procedural rules that would have to be followed and asked her to avail herself of your services, Mr. Akers. Not only did I do that in open Court, I requested to see Ms. Matthews and Mr. Jacob in chambers in an attempt to try and persuade them to avail themselves of the legal assistance that the Court had provided for them. I found from that conversation that Ms. Matthews and Mr. Jacob were in fact sincere in their belief that they could do a better job in defending themselves than the attorneys appointed for them. I also observed Ms. Matthews through the four-day trial and it was the opinion of this Court from that close observation that Ms. Matthews in fact possessed more awareness of what was going on and more intellect in identifying the issues and more acumen in directing questions of witnesses which addressed the issues than did her co-defendant Mr. Jacob, who it is claimed here dominated her into an unknowing waiver of her right to effective counsel.
On several occasions throughout the four-day period of time Ms. Matthews approached the Court individually, sometime in the presence of Mr. Jacob and sometime by herself, to confidentially ask the Court about procedural questions or to ask the Court's advice as to what they should do next, or what she should do next. On each occasion that I was approached by Ms. Matthews, either alone or with Mr. Jacob, I found her to be coherent. I found the questions presented concerning procedure to be intelligent and pertinent questions. However, I did not agree with some of the conclusions drawn by Mr. Jacob and Ms. Matthews from our conversations and as to their strategy in proceeding with the trial and I make these comments into the record, not as an explanation of the Court's actions but to emphasize the fact that I was sincerely concerned with their inability to properly present the theories that they both proposed as defenses to armed robbery. I did not attempt to advise them except as to matters procedural, which I would have required them to meet had they been presented in open Court before everyone present. But in any event, even though Dr. White has taken this stand and even though he is of the opinion that Ms. Matthews did not possess the ability to make an intelligent waiver when she elected to represent herself, I must find from having observed this defendant closely for a period of four days and on occasions since, that she made an intelligent waiver and that she possessed the ability to understand that waiver. I talked to her on numerous occasions attempting to convince her that if an attorney could guide her through the proposed defense the outcome would have possibly been different than it was. She indicated to me on every occasion that she understood that, that attorneys were more capable than lay people. However, she did *311 state to me that she had a total distrust of the system. This was on the first day of the trial. She indicated to me that she did, after our conference, trust the Court. The Court lost that trust on the second day of the trial, and except for procedural matters that we discussed, the defendant Matthews gave no indication to the Court that she was seeking the Court's advice as to her well being. She did on the first day but it is without doubt in my mind, after this long period of observation, that Ms. Matthews understood what she was doing and I am of the opinion, based on this evidence and based on what I know about Ms. Matthews, that she had a choice to go with an attorney appointed by the system or to go with herself and her husband. She made her election. The Court advised her that it was an unwise election but she had the right under our law to make that choice. She was given every opportunity to do otherwise. She was granted her right to represent herself. She exercised that right. She was given, in this Court's opinion, a fair trial and I am not going to order a new trial for her.
The defendant's Motion for a New Trial will be overruled."
Juries and trial judges are not bound to accept the testimony of an expert witness, but may accept or reject parts of that testimony.
An accused could place the trial judge in a difficult situation by insisting on a pro se trial, and, upon conviction, claim that he/she did not have the benefit of counsel and did not knowingly waive counsel. Again, if the court refused to permit an accused to represent himself/herself, and required him/her to have counsel present the case, the accused could contend that he was denied his/her constitutional right in not being permitted to present his/her defense pro se. In such delicate situations, the question of counsel waiver must be determined on the facts of each case. In the case sub judice, the attorneys appointed for the appellants were required to remain in the courtroom within a few feet of the appellants during the four days of trial and were present, ready, willing and able to advise, counsel and assist the appellants. In fact, Matthews did call upon her appointed attorney at times for advice. We are of the opinion that the trial judge, who observed and talked with Matthews prior to trial and for four days during the trial, was in the best position to know whether or not she executed a knowledgeable waiver of counsel and was mentally competent to do so, and that he did not err in overruling the motion for a new trial.
On Jacob's appeal, the sole question presented is that he was denied the benefit of counsel and that he did not knowingly waive counsel. The record is replete to the contrary and is uncontradicted that he did knowingly waive counsel.
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.