## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-KA-00995-SCT

*ANTHONY CHARLES KEMP*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/94 |
| TRIAL JUDGE: | HON. HOWARD Q. DAVIS JR. |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIE J. PERKINS, SR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 5/22/97 |
| MOTION FOR REHEARING FILED: | 6/5/97 |
| MANDATE ISSUED: | 9/25/97 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

This is an appeal by Anthony Charles (Danny) Kemp from a conviction in the Circuit Court of Leflore County for rape, arson, kidnaping, and grand larceny. We find no error in the trial court's decision to allow Kemp to represent himself, in its instructions to the jury, in its refusal to grant a new trial or j.n.o.v., or in its imposition of sentence. Accordingly, we will affirm Kemp's conviction and subsequent sentence.

### I.

On August 14, 1993, Rebecca (Becky) Vanlandingham got up early to go to Wheels, a restaurant on the corner of Highway 7 and Browning Road in Leflore County, Mississippi, to get breakfast before going to work at 7:00 a.m. at the local County Market. Vanlandingham drove a white Nissan car that

belonged to her father-in-law, David Durham. After she had breakfast, Vanlandingham got in the car and drove to the intersection of Highway 7 and Browning Road, where she stopped at a red light. She saw a man, whom she later identified as Kemp, walking north down the shoulder of Highway 7. He turned right at Browning Road and he walked around the curve.

As the light turned green, she began to pull off. However, Kemp snatched the door open, hit her on the left side of her head and screamed at her to move over. Vanlandingham jumped to the passenger seat, and the car stalled, since it was a standard shift. While Kemp attempted to restart the car, Vanlandingham tried to get out of the passenger side of the car. Kemp grabbed Vanlandingham by the neck and pushed her down between the car's bucket seats. He put his elbow on her neck and held her down, while he drove off.

He began to hit and punch her, and while they struggled, Vanlandingham bit Kemp on his right upper arm. He drove her to an area off Highway 7, behind Green Acres subdivision, where Vanlandingham tried again to get away. Kemp caught her, knocked her down and punched her in the face. He pulled her against the car, pushed her shirt over her face, and allegedly raped Vanlandingham from behind.

Subsequently, Kemp demanded all of her money. Vanlandingham gave Kemp her purse, and he told her to run down the levee. Then Kemp got in the car, chased her, and bumped into her. Vanlandingham fell into a ditch in some bushes, where she stayed until Kemp drove away.

Near an opening from the bushes to the road, where Kemp had driven the car, Vanlandingham found a wallet, with a driver's license belonging to the man she believed raped her. Immediately thereafter, Vanlandingham ran to a nearby house and reported that she had been raped and asked to use the phone to call the police. She went to the hospital, where a rape kit was prepared. Vanlandingham gave a statement to local police, describing her assailant as a black male with dark complexion, skinny, about 5'8".

Kemp was indicted on August 25, 1993, for rape, robbery, arson, kidnaping, and grand larceny pertaining to Becky Vanlandingham and her property and the property of David Durham. The trial judge appointed Leman Gandy as Kemp's attorney by order dated August 16, 1993. On September 1, 1993, the trial judge also appointed Leland H. Jones, III to serve as co-counsel with Leman Gandy.

Immediately prior to trial on March 28, 1994, Gandy notified the court that Kemp told him and Jones that he wanted to participate in the trial beyond private discussions. He particularly wanted to do the closing arguments. Gandy asked the court to set some ground rules regarding how to proceed. The court asked Kemp what he wanted to do, and Kemp replied that he would decide during the trial. The court told Kemp that he needed to make a ruling, and that Kemp had the absolute right to be his own attorney. This discussion followed:

> **KEMP**: Correct.
>
> **COURT**: And if you choose to be your own attorney, then I will relieve one of these attorneys completely, and I will allow the other one to stay to give you advice, but not to participate in the trial.
>
> **KEMP**: Fine; I will go with that.

**COURT**: Is that what you want?

**KEMP**: Yes, sir.

**COURT**: Because otherwise I would be requiring these attorneys to just-were they to try this case, to fit it the way that you want it to go, and I can't tell them that they've got to practice law the way you want it to go.

**KEMP**: I understand.

The court relieved Jones as Kemp's appointed counsel, and Gandy remained at the trial with Kemp. The court allowed Attorney Jones to argue the jury instructions, but later made it clear that neither Gandy nor Jones would ask witnesses questions, and that Kemp would act as his own attorney.

After the state presented its evidence, and Kemp chose not to call any witness or testify on his own behalf, the court granted and refused jury instructions, and sent the jury out. On March 31, 1994, the jury convicted Kemp of rape, arson, kidnaping and grand larceny, but found him not guilty of robbery. The court sentenced Kemp to thirty years on the rape charge, three years on the arson charge, thirty years on the kidnaping charge, and five years on the robbery charge, for a total of sixty-eight years, to run consecutively. After the trial court denied Kemp's motion for a new trial, Kemp appealed to this Court.

## II.

Kemp first argues that the lower court committed reversible error concerning the release of his trial attorneys and his pro se representation. He alleges that he "merely requested to participate in the trial, other than private discussions during the trial, in particular, the closing arguments."

This Court, in *Young v. State*, 425 So.2d 1022, 1026 (Miss. 1983), cited Am. Jur. 2d's description of "hybrid representation":

> A defendant in a criminal proceeding is not entitled as a matter of right to be heard by himself and also by counsel and an application or request by an accused to act as co-counsel may be denied in the discretion of the trial court, at least in the absence of a showing or indication of a special need therefor. Nor is an accused entitled to have the services of an attorney for purely advisory purposes.

"It is well established that an accused has no absolute right to hybrid representation." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *Metcalf v. State*, 629 So.2d 558, 563 (Miss. 1993). A trial court may, in its discretion, permit hybrid representation. *Metcalf*, 629 So.2d at 563.

For the case sub judice, it is necessary to determine whether Kemp was a "true" pro se defendant or whether he received hybrid representation. This Court considers several factors when deciding whether the trial court granted pro se or hybrid representation. These factors include the defendant's accessibility to counsel; whether and how often he consults with counsel up to the point of the request; the stage of trial at which he requests a participatory role in his defense; the magnitude of the role he desires to assume; whether the trial court encourages immediate and constant accessibility of counsel; and the nature and extent of assistance of counsel which has been provided up to the point

of the request, including both substantive and procedural aid. *Id.* at 565.

In *Metcalf*, this Court found that the defendant had a participatory role with attorney representation, a "hybrid representation." The court never discharged Metcalf's court-appointed counsel, Trotter, who remained at Metcalf's table and encouraged Metcalf to consult with him throughout the trial. Metcalf remained free to accept or reject advice of counsel, and Metcalf himself presented the opening and closing statements, made one objection, and asked one question on cross-examination of each of the state's witnesses. On the other hand, Trotter argued against introduction of physical evidence, attended bench conferences, directed Metcalf's testimony, conducted cross-examination, and made objections to and arguments to expert testimony. This Court noted that "the record is replete with references to consultations with Metcalf and Trotter as well as numerous instances where Trotter helped to clarify the thrust of Metcalf's argument for the trial court and jury." *Metcalf*, 629 So.2d at 565.

In the case sub judice, the trial judge relieved Jones, but never discharged Gandy. Kemp consulted with Gandy several times during jury selection. Gandy remained at Kemp's table throughout the trial. Gandy did speak on behalf of Kemp at points, but only to make the court aware that Kemp need a break and to let the court know that Kemp wanted to have a bench conference. The court repeatedly remarked to Kemp that he was free to accept or reject the assistance of counsel. However, for the largest part, Kemp rejected the assistance of counsel. Gandy and Jones advised against Kemp representing himself in the first place, and later Kemp suggested that he wanted to try the case himself because his lawyers were not helping his cause.

The trial judge made Gandy stay through the entire course of Kemp's trial. The judge stated, "I don't require attorneys to be co-counsel. I do require attorneys to sit and give advice." Subsequently, the trial judge referred to the fact that Kemp wanted the situation he was in; however, he never said that, or suggested that, Kemp should confer with his attorney. At some points, the judge himself tried to help Kemp along. Nevertheless, Gandy was not allowed to argue on Kemp's behalf. Gandy and Jones were fully involved in representation until the court relieved Jones. Jones made arguments regarding the jury instructions, but nothing else. Gandy did little else that appears on the record, except approach the bench when Kemp did and consult with Kemp during voir dire.

Like the judge in *Metcalf*, the trial judge here never discharged the court-appointed attorney and required him to stay during the proceedings to advise the defendant if the defendant wanted. Unlike the defendant in *Metcalf*, however, Kemp ran his own defense. He made the opening and closing statements, he did the cross-examination of the prosecution's witnesses. Gandy attended the bench conferences, but did not offer any comments or arguments on the record. He made neither motions nor objections on behalf of Kemp. The record does not reflect that Gandy did anything substantively, apart from guiding Kemp through voir dire. Therefore, Kemp engaged in pro se representation. The trial court, in its discretion, required Kemp to be his own counsel, precluding Gandy from examining witnesses and making objections and dismissing Jones, except for argument of jury instructions.

Kemp now argues that he did not intelligently waive his right to counsel. When asked by the trial judge if he wanted to represent himself, Kemp said "yes." Although Kemp now argues that he only wanted to give closing arguments, he himself never made that clear to the court. Kemp waived his right to counsel by telling the court that he wanted to represent himself. The waiver of his right to

appointed counsel was clear:

> **THE COURT**: Mr. Jones, I believe you were appointed to assist Mr. Gandy in this?

> **MR. JONES**: That's correct, Your Honor.

> **THE COURT**: Then, I will relieve you.

> **MR. JONES**: Yes, sir.

> **THE COURT**: Mr. Gandy, I'll instruct you that you are here to advise Mr. Kemp, and he'll act as his own attorney.

> **MR. GANDY**: All right sir. Your Honor, for the record, let the record reflect that during previous conversations that Mr. Jones and I have both advised Mr. Kemp against this, and it's over both of our advice that he has elected this choice.

> **THE COURT**: Mr. Kemp is acknowledging with a head nod that that is correct.

Since Kemp intelligently, though probably erroneously, waived his right to counsel, the remaining question is whether the trial judge abused his discretion in allowing Kemp to proceed pro se. A trial court can commit reversible error by improperly granting a request to proceed pro se and thereby depriving the individual of his right to counsel. *Metcalf*, 629 So.2d at 566. The trial court's decision to allow pro se representation will be disturbed only upon a showing of abuse of discretion. *Id.*

In *Curlee v. State*, 437 So. 2d 1 (Miss. 1983), the trial judge ordered an experienced attorney to remain with the defendant throughout the course of the trial. This Court found that the defendant had every opportunity to avail himself of his attorney's skills and services, and that indeed, the attorney submitted the only jury instructions offered by the defense. *Id.* at 2. "The trial judge was in the best position to determine whether Curlee had made a knowing and intelligent waiver of his right to counsel." *Id.* The same result was reached in *Matthews v. State*, 394 So. 2d 304 (Miss. 1981). Matthews's court-appointed attorney was required to remain in the courtroom, ready, willing, and able to help Matthews, who proceeded pro se. *Id.* at 311. This Court held that the trial judge was in the best position to know whether or not Matthews executed knowledgeable waiver of counsel, and did not err in overruling the motion for new trial. *Id.*

The *Matthews* and *Curlee* cases are analogous to the instant case. The trial judge was in the best position to know whether Kemp effectively and intelligently waived his counsel. In addition, the trial judge observed the defendant, investigated his understanding of the trial process, and advised Kemp on procedure. Similarly, the judge forced counsel to remain with the defendant throughout the trial, for the defendant's sake.

The trial judge gave Kemp a review of trial procedure. He described voir dire, which the defendant said he understood. He described opening statements, cases-in-chief and the defendant said he understood. Then he described closing statements and jury instructions, which the defendant said he understood. The judge made a diligent effort to educate the defendant and offered him the advice of an attorney throughout the trial. The judge did not abuse his discretion in allow the defendant to try his case himself.

Kemp also alleges in a subpoint that he should have been granted a continuance to allow him to obtain another trial attorney. The basis of his argument comes from the following interaction with the trial judge, which occurred on the second day of trial, March 29, 1994:

> **KEMP**: I have several phone calls stating that this case is leaning toward racial discrimination, and I fell [sic] like I should seek counsel because I don't feel like I have proper representation in this matter.
>
> **COURT**: What are you saying?
>
> **KEMP**: Therefore, I ask the Court to allow me time to get counsel.
>
> **COURT**: No, sir, we're in the middle of this trial.

A defendant's request during trial to dismiss his defense counsel and to continue the case until another attorney is retained or appointed is untimely, and decision to grant such a motion lies within the sound discretion of the trial court. *Estelle v. State*, 558 So. 2d 843, 846 (Miss. 1990). Kemp had made the decision to try the case on his own the previous day. He had court-appointed counsel, his right to which he waived, also on the previous day. Kemp had Gandy present to advise him throughout the trial. The court did not abuse its discretion in not permitting Kemp to get another counsel.

As for an alleged failure to warn and instruct the defendant prior to his undertaking to serve as his own counsel, the court did not err. As stated above, the court spent time with the defendant to show him how the trial would progress and what the ground rules were. The court also specifically told the defendant how the trial would proceed if he was representing himself. Throughout voir dire, the court made an extra effort to help Kemp challenge jurors for cause, as well as exercise peremptory challenges.

In addition, the defendant's lawyers discussed with him their disagreement with his decision to try the case himself, both advising against it. Just like the defendant in *Faretta v. California*, Kemp was warned that his decision was probably a mistake, and was made aware that there were still ground rules to be followed. To quote the Supreme Court's dictum in *Faretta*:

> We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

*Faretta v. California*, 422 U.S. 806, 836 (1975). Kemp was well aware of what he faced by trying the case himself.

Finally, Kemp alleges that the lower court erred in failing to make a record on his decision not to testify. This Court has suggested to state trial judges that where the defendant does not testify, he should be called before the court out of the jury's presence and advised of his right to testify. *Culberson v. State*, 412 So.2d 1184, 1186-87 (Miss. 1982). The record does not reflect that the trial judge did this. Nonetheless, this does not require remand for a new trial. The record reflects that Kemp spoke to his court-appointed lawyer before trial about the wisdom of Kemp taking the stand.

Kemp said that he did not testify because his lawyer told him that he would make himself open game and it would hurt more than it would help. He also stated, "I think we went to a small recess and they said something about, okay, if you're gonna put on a defense, said then that means you gonna have to go on the. . .on the witness stand and you can't ask yourself questions so their testimony may hurt more than it would help." Therefore, Kemp was well aware that he could have testified, and he made a knowing choice not to do so. We will not hold the court in reversible error.

### III.

Kemp next argues that the trial court erred in failing to grant instruction D-10 and in granting instruction C-CR-8. Kemp says that instruction C-CR-8 lowered the standard of proof on the arson charge because the record disclosed no eyewitness to the actual burning of the vehicle in question. Kemp feels that he was entitled to a "two-theory instruction" because this was a circumstantial evidence case regarding the arson charge.

Jury Instruction C-CR-8 reads:

> The mere fact that a person has been charged with a crime and has been indicted by a grand jury is no indication whatever that he is guilty of the crime. In fact, the law presumes every person charged with the commission of a crime to be innocent at the outset of the trial. This presumption of innocence stays with the defendant and prevails unless, and until, it is overcome by evidence which satisfies you of the defendant's guilty beyond a reasonable doubt. The burden of proving the defendant guilty of every material element of the crime is upon the State of Mississippi. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty. The defendant is not required to prove his innocence.

Jury Instruction D-10, which was refused, reads:

> The Court instructs the jury with respect to the charge of arson, that if there be a fact or circumstance in this cause susceptible of two interpretations, one favorable and the other unfavorable to the accused, when the jury has considered such fact or circumstance with all other evidence, there is a reasonable doubt as to the correct interpretation, then you, the jury, must resolve such doubt in favor of the accused, and place upon such fact or circumstance the interpretation most favorable to the accused. (C.P. at 94).

"The general rule is that all instructions must be supported by the evidence. Where an instruction is not supported by the evidence, then it should not be given." *Givens v. State*, 618 So.2d 1313, 1320 (Miss. 1993). An instructional error will not warrant reversal if the jury was fully and fairly instructed by other instructions. *Collins v. State*, 594 So.2d 29, 35 (Miss. 1992).

A circumstantial evidence instruction is necessary only where the evidence is "wholly circumstantial." *Hunt v. State*, 92-KA-00475-SCT (Miss., Aug. 8, 1996). If a confession exists, a circumstantial evidence instruction is unnecessary; but, when the prosecution is without a confession or eyewitnesses, then the circumstantial evidence instruction is required. *Taylor v. State*, 672 So.2d 1246, 1270 (Miss. 1996). If there is any direct evidence supporting the state, the circumstantial evidence instruction must be refused. *Givens v. State*, 618 So.2d 1313, 1319 (Miss. 1993). It is only

in cases consisting entirely of circumstantial evidence that an instruction must be given which requires the jury to resolve, in favor of the accused, doubt over circumstances susceptible of two interpretations. *Petti v. State*, 666 So.2d 754, 757 (Miss. 1995). Where the evidence is purely circumstantial, the trial court must grant a "two-theory" instruction. *Id.* at 757. Circumstantial evidence may be used to prove intent without giving a circumstantial evidence instruction. *Jones v. State*, 635 So.2d 884, 886-87 (Miss. 1994).

The trial court refused instruction D-10, the two-theory instruction. However, the court did grant another circumstantial evidence instruction, D-4-C, on the arson charge, reading:

> Anthony Kemp has been charged with the offense of arson. If your [sic] find from the evidence in this case beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with his innocence that Anthony Kemp: a) on or about August 14, 1993 in LeFlore County, MS b) willfully and maliciously caused to be burned, c) the property of David E. Durham then you shall find the defendant guilty as charged. If the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with his innocence, then you shall find Anthony Kemp not guilty of arson.

The circumstantial evidence instruction, when read with Instruction C-CR-8, was sufficient to send a clear message to the jury that the state had the burden of proving all elements of the crime of arson, that Kemp was presumed innocent, and that if they had a reasonable doubt about his guilt, then they should find Kemp not guilty of arson. The defendant did not present any facts or circumstances with regard to the arson charge that could be construed as favorable to him. The jury was fully and fairly instructed by Instruction C-CR-8 and the circumstantial evidence instruction, D-4C. Reversal is not warranted on this assignment of error.

## IV.

Kemp next argues that there was insufficient evidence in support of his convictions. He alleges that there was conflicting testimony from the victim as to his complexion, as well as how he managed to drive the stolen car and hold down and beat the victim at the same time. Kemp also complains that Vanlandingham's testimony conflicts with that of Mrs. Lewis, the woman from whose house she sought to call the police.

When this Court reviews the sufficiency of the evidence, it looks to all of the evidence to determine whether or not a reasonable, hypothetical juror could find, beyond a reasonable doubt, that a defendant is guilty. *Morgan v. State*, 681 So.2d 82, 92 (Miss. 1996). Evidence supporting the verdict is accepted as true, and the state is given the benefit of all reasonable inferences flowing from that evidence. *Id.* This Court should not reverse a trial judge's denial of a motion for a new trial unless it is convinced that the verdict is so contrary to the weight of the evidence that, if it is allowed to stand, it would sanction an unconscionable justice. *Id.* The standard of review of a post-trial motion is abuse of discretion. *Eakes v. State*, 665 So.2d 852, 871 (Miss. 1995).

Rebecca Vanlandingham testified at trial that she definitely believed that Kemp was her assailant, based on her having his driver's license with his photograph and having seen him in the car with her. The jury was allowed to hear that Vanlandingham had made a prior statement regarding Kemp's

complexion, which might create a reasonable doubt in the jury's mind as to Vanlandingham's ability to identify her assailant/kidnapper. Vanlandingham also explained how the defendant managed to drive her standard shift car while holding her down. Her testimony was sufficient to show that he was able to kidnap her. The jury had the choice to determine which evidence was more credible and conclusive, and had sufficient evidence to find beyond a reasonable doubt that Kemp was guilty of kidnaping.

The evidence presented by Debbie Haller, the forensic serologist, sufficiently implicated the defendant as the rapist, based on the two seminal fluid stains which were consistent with Kemp's own seminal fluid. This testimony, combined with that of other experts--the dentist, Dr. West, who stated that the teeth marks on Kemp's body matched Vanlandingham's teeth; the emergency room physician, Dr. Lewis Moses, who testified that his examination of Vanlandingham revealed results consistent with vaginal rape; and DNA expert Jack Mertens, who testified that DNA found in vaginal swabs and blood stains matched Kemp's--support the verdict on the rape charge against Kemp, and must be taken as true.

The arson verdict was made based on circumstantial evidence alone. Kemp was the last person seen in the car, and Sergeant Miller, the Greenwood police officer, testified that he received a call at about 6:50 a.m. on the morning of the incident that a person had been raped. He testified that he arrived at 413 McCool to find Vanlandingham, and ten to fifteen minutes later, an ambulance arrived. He then stated that after gathering information and evidence from Vanlandingham, he followed the ambulance to take her to the hospital. En route to the hospital, he got a call about the car burning, and he arrived at the burned out automobile at 8:00. Kemp was last seen with the car at about 7:00 a.m. on August 14, 1993, and he would have time to burn the car. As discussed above, the jury was properly instructed as to how the evidence regarding the arson must be viewed, so there was sufficient circumstantial evidence to convict Kemp on that charge.

Kemp finally alleges that there was no evidence to sustain the conviction of grand larceny. Specifically, he argues that the state did not prove that he intended to permanently deprive the owner (David Durham) of his automobile. The jury was properly instructed on the grand larceny charge. Again, Vanlandingham testified that Kemp left the scene in the white Nissan, and Sergeant Terry Stanford testified that based on his experience, if the car had been taken from Vanlandingham and left where it was found, he thought that that would indicate grand larceny. This testimony and the circumstantial evidence presented regarding Kemp's role in the arson of the car, gave the jury enough evidence to show that Kemp intended to deprive the owner of the car wholly and permanently. The jury could infer that Kemp abandoned the car where it was found, since he was the last person seen in the car approximately one hour before it was burned. Kemp never returned the car to Vanlandingham, or to Durham, so it may be inferred from the circumstantial evidence that Kemp intended to deprive the owner of his property wholly and permanently.

## V.

The lower court sentenced Kemp to a total of sixty-eight consecutive years in prison, as a result of his convictions for rape, arson, kidnaping, and grand larceny. Kemp contends that the sentencing of the court violates his state and federal rights against cruel and unusual punishment. Alternatively, Kemp contends that his sentencing up to the maximum amount permitted by each of the statutes,

save rape, is "grossly disproportionate" or "shockingly excessive."

Sentencing is within the complete discretion of the trial court and is not subject to appellate review if it is within the limits prescribed by statute. *Hoops v. State*, 681 So.2d 521, 537 (Miss. 1996); *Fleming v. State*, 604 So.2d 280, 302 (Miss. 1992). Where a sentence does not exceed statutory limits, it does not constitute cruel and inhuman treatment. *Sanders v. State*, 678 So.2d 663, 669 (Miss. 1996).

To review the proportionality of certain sentences, this Court has used the three-pronged analysis set forth in *Solem v. Helm*, 463 U.S. 277, 292 (1983), which include (1) the gravity of the offense and the harshness of the penalty; (2) comparison of the sentence with sentences imposed on other criminals in the same jurisdiction; (3) comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed in this case. *See Fleming*, 604 So.2d at 302-03. However, *Solem* is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality." *Hoops*, 681 So.2d at 538. In *Hoops*, this Court determined that the defendant's sentence of thirty years at age eighteen was not grossly disproportionate to his crimes of shooting two people for being in a rival street gang.

In this case, the defendant was convicted of four crimes, including rape. The court did not exceed the statutory limits on any of the crimes. Even though the cumulative effect of the crimes gives the defendant a much longer period in prison, the court did not abuse its discretion in issuing the sentences. This does not amount to cruel and unusual, shockingly excessive, or grossly disproportionate punishment.

The only element raised by Kemp is the first one in *Solem*: gravity of the offense and harshness of the penalty. Even if there was a conclusion that the sentence required further analysis, Kemp has produced no facts concerning sentences in this or other jurisdictions. The trial court was not in error and did not abuse its discretion because the sentence imposed was within the limits fixed by statute for each crime and not so grossly disproportionate nor shockingly excessive as to warrant its reversal. *See Edwards v. State*, 615 So.2d 590, 598 (Miss. 1993).

## VI.

Anthony Charles Kemp has failed to present any basis for reversal of his conviction and subsequent sentence for rape, arson, kidnaping, and grand larceny. It is for the above stated reasons that we affirm Kemp's conviction below.

**COUNT I: CONVICTION OF RAPE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT III: CONVICTION OF ARSON AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT III TO RUN CONSECUTIVELY WITH SENTENCE IN COUNT I. COUNT IV: CONVICTION OF KIDNAPPING AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT IV TO RUN CONSECUTIVELY WITH SENTENCES IN COUNTS I AND III. COUNT V: CONVICTION OF GRAND LARCENY AND**

**SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT V SHALL RUN CONSECUTIVELY WITH SENTENCES IN COUNTS I, III, IV, FOR A TOTAL OF SIXTY-EIGHT (68) YEARS.**

**PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER AND SULLIVAN, P.JJ.**

BANKS, JUSTICE, DISSENTING:

I am compelled to dissent because I do not believe that the record suggests a knowing and intelligent waiver of counsel.

The majority quotes American Jurisprudence for a proposition that is directly contrary to the provisions of the Constitution of the State of Mississippi. While I am mindful of the dilemma with which trial courts are presented when criminal defendants assert their right to be heard pro se and by counsel, I cannot condone the failure of those courts to adequately address the ability of the defendant to conduct a defense prior to denying what the majority terms "hybrid representation." Simply put, that our constitution contemplates the "hybrid" handling of trial proceedings. Mississippi Constitution Art. 3 § 26 ("In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, *or both . . . .*") (emphasis supplied). It is for this Court to establish guidelines to see that such proceedings are handled in a reasonable manner calculated to avoid unnecessary delay and to promote a fair consideration of the issues presented. This Court should not sanction trial courts imposing "either/or" conditions on such representation beyond that necessary to assure orderly proceedings.

In this case the trial court stated flatly that Kemp would not be permitted to participate in his defense with the assistance of counsel on a "co-counsel" basis but instead restricted him to an advisory counsel. There is in my view no basis in our law for such an arbitrary action. The majority suggests that Kemp intelligently waived counsel. The fact is that the court gave Kemp an either/or proposition without first engaging in any analysis of Kemp's ability to represent himself, or his knowledge of what self-representation would entail. Kemp clearly wanted the assistance of counsel in the form of "co-counsel." This assistance was denied.

Although the trial court did explain the various stages of the trial to Kemp, and explained his rights to ask questions and object to questions, it failed to explain to Kemp the dangers of self-representation and further failed to ascertain whether he fully appreciated those dangers. "Any defendant who desires to act as his own counsel should be carefully warned and instructed by his trial counsel and the trial court prior to his undertaking this task." *Trunnell v. State*, 487 So. 2d 820, 826 (Miss. 1986). The record reflects no such warning by the court.

Because it is my view that the trial court arbitrarily denied "hybrid" representation and because the trial court failed to adequately warn Kemp or to ascertain his ability to conduct a pro se defense, I would reverse.

**PRATHER AND SULLIVAN, P.JJ., JOIN THIS OPINION.**