904 So.2d 1112 (2004)
Deborah L. PARTAIN, Appellant
v.
STA-HOME HEALTH AGENCY OF JACKSON, INC., Appellee.
No. 2003-CA-00804-COA.
Court of Appeals of Mississippi.
October 12, 2004.
*1115 Myles A. Parker, Jackson, Alicia Kate Margolis, attorneys for appellant.
Donald James Blackwood, Thomas L. Kirkland, Ridgeland, attorneys for appellee.
Before KING, C.J., IRVING and MYERS, JJ.
MYERS, J., for the Court.
¶ 1. Deborah L. Partain appeals from a final judgment of the Circuit Court of Hinds County in favor of the defendant, Sta-Home Health Agency of Jackson, Inc., granting a motion for directed verdict. Partain appeals raising the following issues:
I. WHETHER THE TRIAL COURT ERRED IN GRANTING STA-HOME HEALTH AGENCY'S MOTION FOR DIRECTED VERDICT.
II. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF DAVID HERRINGTON'S PREGNANCY RELATED COMMENTS.
III. WHETHER THE TRIAL COURT ERRED IN DENYING PARTAIN'S MOTION IN LIMINE AND OTHER EVIDENTIARY RULINGS.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. Debbie Partain began working for Sta-Home Health Agency of Jackson, Inc. as a secretary in April 1992. After being employed by Sta-Home for a period of approximately three years, Sta-Home agreed to pay Partain's tuition to Hinds Community College to earn a degree as a registered nurse. In December 1996, Partain graduated with her nursing degree and began working in this capacity for Sta-Home in January 1997. One requirement of the employment and tuition agreement was for Partain to complete 192 hours of clinical work in a hospital of her choosing.
¶ 3. During Partain's employment, the economic climate for Medicare and Medicaid reimbursed healthcare organizations such as Sta-Home became unstable. This instability was brought about by the Balanced Budget Act of 1997, in which Medicare and Medicaid expenditures were significantly decreased. As a result of lower Medicare and Medicaid budgets, organizations such as Sta-Home were forced to reorganize their operations in order to survive.
¶ 4. The reorganization of Sta-Home involved the elimination of roughly thirty positions from the company's 300 person workforce, an approximate ten percent reduction. In order to determine which employees would be released, Sta-Home conducted an evaluation which ranked each employee on a scale of negative three to three. In making their determination, Sta-Home used three criteria which were given a value of negative one to one, and the score was tallied giving a range from negative three to three. The criteria included skill level, productivity, and overall performance. Partain ranked poorly on her evaluation, in which her failure to complete the required 192 hours of clinical *1116 work was noted. Partain was one of thirty employees dismissed.
¶ 5. Partain brought a claim against Sta-Home under Title VII of the Civil Rights Act of 1964 in which she alleged that her termination was motivated by her gender and her pregnancy. Partain alleged that Ronald Thorp, a male nurse with less experience and skill, was retained in her position. Upon the close of Partain's case-in-chief, Sta-Home moved for a directed verdict which was granted.

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN GRANTING STA-HOME HEALTH AGENCY'S MOTION FOR DIRECTED VERDICT.
¶ 6. Partain asserts that the trial court erred in granting Sta-Home's motion for directed verdict. In making this determination, this Court must view the evidence in the same light as the trial court. Thus, this Court must review the circuit court's ruling de novo. Fulton v. Robinson Indus., Inc., 664 So.2d 170, 172 (Miss. 1995).
¶ 7. Upon the close of Partain's case, Sta-Home moved for directed verdict pursuant to rule 50(a) of the Mississippi Rules of Civil Procedure. In making a determination, the trial court may grant a directed verdict for the defendant at the close of the plaintiff's case if, in the opinion of the court, the plaintiff has failed to present credible evidence establishing the necessary elements of his or her right to recover. Thomas v. Smith, 786 So.2d 418, 419(¶ 2) (Miss.Ct.App.2001). When the defendant moves for a directed verdict at the close of the plaintiff's case-in-chief, the court must consider the evidence before it at that time in the light most favorable to the plaintiff, giving the plaintiff the benefit of all favorable inferences that reasonably may be drawn from that evidence. Benjamin v. Hooper Electronic Supply Co., 568 So.2d 1182, 1187 (Miss.1990). Only, when viewed in the light most favorable to the plaintiff, should the court determine that the matter is so overwhelmingly in favor of the defendant that no reasonable juror could find for the plaintiff, should the court direct a defendant's verdict. Id.
¶ 8. In making its determination for directed verdict on a matter concerning Title VII of the Civil Rights Act of 1964, the trial court will apply the burden shifting test prescribed by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In making his or her prima facie case, the plaintiff must show (i) he or she is a member of a protected class, (ii) he or she was qualified for the position lost, (iii) he or she suffered an adverse employment action, and (iv) that others similarly situated were more favorably treated. Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998) (citing McDonnell Douglas, 411 U.S. at 792-793, 93 S.Ct. 1817). Upon presentation of the plaintiff's prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas. Id. at 804, 93 S.Ct. 1817. If there is a showing of some legitimate, nondiscriminatory reason for the action, the burden shifts back to the plaintiff who must demonstrate that the proffered reason(s) for the action were merely "pretext" for a decision made based upon discriminatory criteria. Id. at 804, 93 S.Ct. 1817.
¶ 9. In determining whether the plaintiff has met his or her burden of proving a prima facie case, the court views the four factors outlined above. In the case sub judice, Partain has not proven all of the necessary elements of a prima facie case. *1117 Partain, as a pregnant woman, falls within a protected class. Partain also has suffered adverse employment action by losing her position with Sta-Home. Thus, factors one and three have arguably been met.
¶ 10. Where Partain fails to meet her burden of proof is with the second factor, that she is qualified for the position lost. Partain argues that previous employment reports were conducted giving her very high marks. Though positive peer reviews occurred, the peer reviews do not ultimately determine whether one is or is not qualified for the position lost. The fact remains that Partain has failed to meet an express requirement of her tuition agreement and employment contract; therefore, she can not completely meet the second prong of this four part test.
¶ 11. Partain next fails to meet the fourth prong of the McDonnell Douglas test, that others similarly situated were more favorably treated. Partain contends that she was replaced by someone similarly situated, namely Ronald Thorp, a member of Partain's graduating class. Though both Partain and Thorp may have possessed their degrees for the same duration, Thorp obtained over 600 hours of clinical work, in comparison with Partain's zero hours. Secondly, the trial record does not indicate that there was any direct comparison made between Partain and Thorp, and in fact it indicates the converse, that there was never a direct comparison made between the two. The record indicates only that each nurse was evaluated on a scale of negative three to three and comparisons of the nurses were made cumulatively. There was a reduction in personnel at Sta-Home. Partain did not meet all of the employment requirements. Thorp did meet all of the employment requirements. In making the decision on which employees to retain and which employees to dismiss for the cutback, Sta-Home retained those which were most qualified for each position. Sta-Home felt that other nurses were more qualified for the available positions than Partain.
¶ 12. Partain raises the issue that the length of time that an employee has with the company was a factor in determining which employees would be discharged. It is undisputed that Partain worked at Sta-Home for a considerably greater amount of time than Thorp. It is also clear that the length of time consideration would act as a "tie-breaker" in the event that a determination had to be made between which of two employees to retain. Such was not the case, as the decision of Sta-Home was never between retaining Thorp or Partain.
¶ 13. If Partain had proven each element of her prima facie case, Sta-Home would then have to prove some legitimate, non-discriminatory reason for its actions. Though a prima facie case was not presented, Sta-Home has accomplished this task. Sta-Home presented five legitimate, non-discriminatory reasons for Partain's dismissal. First, Sta-Home adduced evidence that Partain's release was in response to budget setbacks caused by the Balanced Budget Act of 1997. Second, Sta-Home followed a consistent procedure in making evaluations regarding which employees should be retained. Three factors, skill and certification level, overall productivity, and overall performance were weighted and given a score of negative one to one to arrive at a composite score for each employee. Retention decisions were based upon each employee's overall score. This was a neutral method for making this determination. Third, Partain was in breach of her tuition agreement with Sta-Home. Partain never acquired the requisite number of clinical hours as agreed upon in paragraph four of her tuition *1118 agreement with Sta-Home. In this tuition agreement, Sta-Home agreed to pay for all tuition costs Partain would incur during pursuit of her nursing degree in consideration for Partain's promise to work for a period of up to three years, to begin work within thirty days after completion of her State Board exams, to accept market pay, to complete at least 192 hours in an acute care setting within the first year after graduation, and should the student be unable to continue employment with Sta-Home, to pay back tuition expenses. Fourth, Sta-Home referenced specified problems Partain was having in handling her patient load, a result of time management difficulties and failure to keep her paperwork up to date. Fifth, Sta-Home presented evidence that Partain had difficulties in communicating with her supervisors regarding schedule changes.
¶ 14. Upon proof of some legitimate, non-discriminatory reasoning for Partain's dismissal, the burden then shifts back to Partain to show that the reasons proffered by Sta-Home were a mere pretext for discrimination. Any reasoning presented by Partain showing that Sta-Home's actions were a mere pretext for discrimination must be shown by substantial evidence. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To rebut the non-discriminatory reasons offered by Sta-Home, Partain must procure offerings which negate the proffered reasoning set forth by Sta-Home. Partain's evidence is "not so persuasive so as to support an inference that the real reason was discrimination." Rubinstein v. Admin'r of Tulane Educ. Fund, 218 F.3d 392, 400 (5th Cir.2000).
¶ 15. Partain offered the performance evaluations of Thorp and herself to rebut Sta-Home's reasons for termination, citing the reports as stating Partain's performance as "very successful" and Thorp's performance as "successful." Testimony at trial indicated that performance evaluations were conducted by fellow nurses and that performance evaluations were normally overwhelmingly positive. Though it is undisputed that Partain received higher marks on her performance evaluation than Thorp, testimony and evidence presented showed that performance evaluations were not factored into retention decisions, nor were any direct comparisons made between Partain and Thorp. On the evaluations upon which the decision to retain or dismiss employees were based, Partain scored lower than Thorp. Partain's performance review was conducted in April 1997, less than four months after beginning work as a nurse for Sta-Home, whereas the final evaluation of Partain occurred in November 1997. Partain's performance review was not solely rating her nursing skills, her secretarial skills were also included in the evaluation. Considering Partain's work after the performance review was conducted, and looking solely at her nursing skills, from June 1997 to October 1997, Partain's patient visitations decreased from ninety-three to sixty-one, a decrease in visitation productivity of thirty-four percent.
¶ 16. Partain offered testimony that she was never confronted by Sta-Home's management regarding poor performance or negative feedback and that she was never confronted regarding the required 192 hours of clinical work. This simply is not true. Partain's contention that she was never confronted by Sta-Home's management regarding performance or negative feedback nor was she confronted regarding the required 192 hours of clinical work is disputed by a writing signed by Partain, her supervisor Patricia Gaines, as well as her team leader Becky Cook on September 17, 1997. This document indicates that *1119 Partain had been having scheduling problems as well as needing to obtain 192 hours of clinical work. Partain further testified that she felt as though she "had it easy" with regard to conflicting testimony that she was falling behind in her duties. Again, the decrease in patient visits from June through October 1997 refute this assertion. Therefore, we find this issue is without merit.

II. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF DAVID HERRINGTON'S PREGNANCY RELATED COMMENTS.
¶ 17. Partain argues that the trial court erred in excluding evidence of David Herrington's pregnancy related comments. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Tatum v. Barrentine, 797 So.2d 223, 230(¶ 12) (Miss. 2001) (citing Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss. 1997)).
¶ 18. On November 18, 1997, when Partain was dismissed, the termination notice was given by David Herrington, the administrator of Sta-Home. In his administrative capacity, Herrington administers and coordinates the daily activities of the corporation, which presumably includes the releasing of employees. Upon notification of her dismissal, Partain became visibly upset and Herrington made comments to her which included "think about the baby" and "not get so upset." Partain states that excluding this evidence was error.
¶ 19. In order for a remark to be used as evidence of a pretext for discrimination, two factors must be met. The remark must (1) demonstrate discriminatory animus and, (2) be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decision maker. Laxton v. Gap Inc., 333 F.3d 572, 583 (5th Cir.2003). This statement is inadmissible as evidence of a pretext for discrimination because it does not suggest that Partain was being dismissed for her pregnancy nor does it suggest any type of discriminatory intent. The statement, which Partain alleges Herrington made, is one of concern for the well being of Partain and her child. "Think about the baby" and "not get so upset" does not indicate that Partain was released by Sta-Home because of her pregnancy, rather this was a statement of compassion for Partian's feelings. This statement does not satisfy both prongs of the Laxton two part test and exclusion of the statements was proper. Therefore, we find this issue is without merit.

III. WHETHER THE TRIAL COURT ERRED IN DENYING PARTAIN'S MOTION IN LIMINE AND OTHER EVIDENTIARY RULINGS.
¶ 20. Partain raises three evidentiary issues in which she contends the trial court erred. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Tatum v. Barrentine, 797 So.2d 223, 230(¶ 12) (Miss.2001) (citing Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997)).
¶ 21. First, it is asserted that the court erred in not allowing cross-examination of Gaines regarding the performance appraisal of Thorp as well as occasions where Partain contends she had to help Thorp in his work. At trial, the exclusion of Thorp's performance appraisal while cross-examining Gaines was proper. There was no relevance, as throughout the trial it was stated repeatedly that there was never a direct comparison made between *1120 Partain and Thorp, all nurses were compared collectively. Relevance in this instance is lacking as Thorp's performance appraisal was arguably selected by Partain because he was male, he had worked for Sta-Home for a shorter duration of time than Partain, and he and Partain were in the same graduating class. If looking at the facts broadly on the basis of gender, experience, and length of service, it would appear that there would be some form of relevance in Thorp's performance appraisal. Though, viewing the circumstances in their entirety, it is clear that the employment of Thorp and Partain are completely unrelated. Looking at the matter in the same manner in which Sta-Home was forced to select which employees to retain, we find the company evaluated that Thorp had acquired over 600 hours of clinical work to Partain's zero hours. From July to October, the only time period in which both Partain and Thorp were visiting patients so that a comparison is possible, Thorp's patient visits increased. Thorp's patient visits rose from sixty-seven in July, to eighty-two in August, eighty-three in September, and eighty-nine in October. Conversely, Partain's patient load decreased over the same reference period from seventy-nine in July, to seventy-one in August, seventy-seven in September, to sixty-one in October. Even taking into consideration Partain's eleven to twelve day absence from work in October due to pregnancy-related complications, Partain's overall patient visits had decreased while Thorp's had increased.
¶ 22. It was never stated anywhere within the record that Partain was a bad nurse. Sta-Home obviously saw potential in Partain, as it agreed to pay her tuition to nursing school. This simply is a case which focuses on the bottom line of economics. Thorp was a more productive nurse than Partain and in deciding which employees were to be terminated, the decision was firmly rooted in economics. The Mississippi Supreme Court has made it clear that "for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995) (citing Hansen v. State, 592 So.2d 114 (Miss.1991)). Even if Thorp's performance appraisal had never been admitted into evidence, no prejudice would have occurred and no substantial right would have been affected. Thorp's performance appraisal ultimately was admitted into evidence, just not at Partain's preferred moment in the hearing; therefore, we find no merit in this argument.
¶ 23. Partain next argues that the trial court committed reversible error because it sustained Sta-Home's objections to her failure to lay a predicate during questioning of her expert witness regarding the 192 hour clinical work requirement. The proper standard of review for exclusion of such testimony is whether or not the trial court abused its discretion. Admission or rejection of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. K-Mart Corp. v. Hardy ex rel. Hardy, 735 So.2d 975, 983 (¶ 21) (Miss.1999) (citing Broadhead v. Bonita Lakes Mall, Ltd. P'ship, 702 So.2d 92, 102(¶ 35) (Miss.1997)) (quoting Sumrall v. Miss. Power Co., 693 So.2d 359, 365 (Miss.1997); Gen. Motors Corp. v. Jackson, 636 So.2d 310, 314 (Miss. 1992); Walker v. Graham, 582 So.2d 431, 432 (Miss.1991)). For a case to be reversed based on error in the admission or exclusion of evidence, the error must result in harm and prejudice or adversely affect a substantial right of a party. Id. at 983 (citing Hansen, 592 So.2d at 114 (1991)). Although the issue raised on appeal was whether Partain's expert was incorrectly *1121 prohibited from testifying regarding the actual impact of the 192 hours of clinical work on her skills as a home health nurse, from the testimony, it appears as though the ultimate opinion sought was elicited, as follows:
Mr. Fentress, there's been a lot of talk about the 192 hours. In carrying out your skills assessment of Debbie Partain, do you have an opinion as to whether the lack of 192 hours in November of 1997 had any impact on her skills or abilities as a registered nurse?
BY MR. KIRKLAND: If it please the Court, I object to that. I don't think he knew her at that point and time to assess whether or not that had any impact on her skills as a nurse. He's asking him now after review of her at a later point to transpose back in time to say as of that date she was a good nurse without the 192 hours.
BY MR. PARKER: Your Honor, he conducted a skills assessment of this young lady. He should be able to answer and entitled to answer this question.
BY THE COURT: If you lay a proper predicate.
BY MR. PARKER: I'm sorry?
BY THE COURT: If you lay a proper predicate.
BY MR. PARKER: (Continuing)
Q. Based on the information that you have reviewed and your interview with Ms. Partain, do you have a professional opinion as to whether she was properly skilled and qualified as a registered nurse in November of 1997?
BY MR. KIRKLAND: Same objection, Your Honor. He's asking him to jump back in time. There's no predicate for that, and he would have no way of knowing in November whether or not she was a qualified nurse with or without the 192 hours.
BY THE COURT: Sustained, again, unless there's a proper predicate laid.
BY MR. PARKER: (Continuing)
Q. What is your opinion, sir, as to the skills and qualifications of Deborah Partain as a registered nurse?
A. That she was highly skilled in her field working both in the home health field and later as an RN in a hospital setting.
Finding no abuse of discretion, we find no merit to this issue.
¶ 24. The last issue Partain raises on appeal is whether or not the trial court erred in holding that there was no violation of the rule of sequestration, or "the rule" as it is known in Mississippi. It is well settled in Mississippi jurisprudence that when a violation of Rule 615 of the Mississippi Rules of Evidence is alleged on appeal, this Court is limited to an abuse of discretion standard of review. Woulard v. State, 832 So.2d 561, 565 (¶ 13) (Miss.Ct. App.2002) (citing Douglas v. State, 525 So.2d 1312, 1318 (Miss.1988)). There is no justification for reversal unless there is a showing of prejudice sufficient to constitute abuse of discretion on the part of the trial judge in not ordering a mistrial or not excluding testimony. Id.; Whittington v. State, 748 So.2d 716(¶ 19) (Miss.1999).
¶ 25. At issue is whether Partain was prejudiced by Mrs. Peggy Stewart's return to the witness room after having testified. During trial, Mrs. Stewart was called as an adverse witness as were many of the defense witnesses during Partain's case-in-chief. Upon being excused until Sta-Home's case-in-chief, witnesses were to go back to the witness room. There were instructions given each witness that they were not to discuss any aspects of the testimony which they had given at trial. The issue of a possible violation of Rule 615 was raised the second day of trial, *1122 prior to any further testimony. The court allowed Partain to examine the witnesses regarding any communications which may have been in violation of the rule.
¶ 26. From the record, it does not appear that any material issue of the case was discussed. Though the case was discussed generally, the record is devoid of a showing that any witness had discussed his or her personal testimony with the others. Rule 615 was drafted to prevent witnesses from tailoring their testimony to conform with one another. Although the Court recognizes the serious nature of the subject matter the rule was drafted to prevent, we are of the opinion that the actions which Rule 615 seeks to prevent are not present.
¶ 27. The trial court allowed Partain to examine the witnesses regarding any potential violation and found that no violation had occurred. This decision was a proper exercise of the court's discretion. Therefore, we find the issue to be without merit.
¶ 28. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. THE APPELLANT IS ASSESSED ALL COSTS OF THIS APPEAL.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR. BARNES AND ISHEE, JJ., NOT PARTICIPATING.